619 A.2d 163

**In re JASON W.**

**No. 510, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Jan. 28, 1993.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Walter B. Dorsey, State's Atty.

for St. Mary's County, Leonardtown, on the brief), for appellee.

Argued before WILNER, C.J., and MOYLAN, and BISHOP, JJ.

WILNER, Chief Judge.

This appeal is from an order entered by the Circuit Court for St. Mary's County, sitting as a Juvenile Court, directing appellants Jason W. and his mother to pay restitution in the amount of $3,656 to the St. Mary's County Sheriff's Department. Appellants contend that the court had no right to enter such an order.[1] We agree.

The case stems from events that occurred on the evening of May 12, 1991. At about 10:00 p.m., Deputy Sheriff Guy observed a motorcycle being driven on a public highway without registration tags. Guy had previously received a report of the motorcycle "fleeing and alluding [sic]", although it is not clear from whom it was fleeing or whom it was eluding. Guy informed Deputy Sheriff Cusic, who was traveling behind him, that he was in pursuit of the motorcycle. Guy was operating a standard police cruiser; Cusic was driving an all-terrain vehicle marked with the sheriff's insignia and containing emergency police lights and siren. Cusic caught up with Guy, activated his emergency equipment, and began to pursue the motorcycle in an attempt to stop it. Indeed, Cusic took the lead in the chase, with Guy following behind him.

Jason, the driver of the motorcycle, instead of slowing down and stopping, sped up and turned into the parking lot of Great Mills High School. Cusic followed him around the school grounds, through an opening in a guard rail, across a baseball field, and down a path into some woods. Guy, in

---

**1.** Although the notice of appeal mentions only Jason, it seems evident from the brief and from counsel's assertion at oral argument that the appeal is on behalf of both Jason and his mother. We shall therefore consider the appeal as having been taken by both Jason and his mother.

his cruiser, was behind Cusic. After traveling about 100 yards through the woods, Jason's motorcycle lost traction on the leaves and stalled. Jason then surrendered to Cusic and was arrested. Meanwhile, Deputy Guy misjudged the width or course of the path and, while attempting a left turn onto the path, drove into a tree, causing extensive damage to the cruiser and injury to himself.

As a result of this incident, a three-count petition (No. 91–123) was filed against Jason, charging him with operating an unregistered vehicle, eluding an officer, and driving on a suspended license. It appears that two other petitions (Nos. 91–120 and 91–134) had also been filed against Jason, although the record before us does not indicate the basis of those petitions. On August 30, 1991, the court took up all three petitions. As the result of a plea bargain, Jason entered a plea of "involved" to count one of Petition 91–123, charging the operation of an unregistered vehicle, and all other charges in that petition and the others were placed on the "stet" docket. One condition of this agreement was that "restitution is going to remain open, and that the restitution hearing will be held at the time of the disposition in this case." In that regard, the State's Attorney noted that "[t]here's a police car totally destroyed as a result of the chase. There's going to be a restitution hearing in that case."

On September 27, 1991, the court held an adjudicatory hearing. Following the recommendations contained in a social history prepared by the Department of Juvenile Services, the court found Jason to be delinquent, placed him on supervised probation, and indicated that it "will order restitution, if that amount cannot be agreed upon" at a subsequent hearing. The amount apparently could not be agreed upon, and so another hearing was held on October 25, 1991.[2]

---

2. In their brief, appellants assert that the restitution hearing was held on the afternoon of September 27. The cover page of the transcript of that hearing indeed shows the date of September 27 and notes that the hearing was held during the afternoon session. The date appears to

The restitution being sought was the amount of damage to Deputy Guy's police cruiser. There was no real dispute as to the amount of that damage; the issue was whether Jason or his mother could be held liable for it under the circumstances. Jason argued, as appellants do here, that, although he was indeed fleeing at the time, he did nothing to cause Deputy Guy to run his car into a tree, and that there is no common law or statutory basis for a restitution order requiring him or his mother to pay for the damage to the car.

The authority of a juvenile court to order restitution derives from Md.Code Cts. & Jud.Proc. art., § 3–829(a), which states, in pertinent part:

"(1) The court may enter a judgment of restitution against the parent of a child, the child, or both in any case in which the court finds a child has committed a delinquent act and during *or as a result of* the commission of that delinquent act has:

(i) Stolen, damaged, destroyed ... or substantially decreased the value of the property of another ...

(2) The court may order the parent of a child, a child, or both to make restitution to:

\* \* \* \* \* \*

(ii) *Any governmental entity....*"

(Emphasis added.)

At the restitution hearing, Deputy Guy stated that he saw Deputy Cusic follow appellant into the woods and that "I could see there was a wide enough roadway for a vehicle to continue. And, so I continued on with the pursuit figuring if his vehicle could go down there so could mine." Unfortunately, as we indicated, he misjudged either the course of the pathway or where it was, for as he turned left

---

be in error, however. For one thing, the court stated at the conclusion of the disposition hearing that the restitution hearing would be on October 25. The docket entry shows that it took place on October 25, and the restitution order, signed October 30, recites that the hearing occurred October 25.

into it, he hit the tree. Deputy Guy stated that he was still in pursuit of appellant when the accident occurred and that he proceeded after him, even though Deputy Cusic was also in pursuit, "because it is my job."

At the conclusion of the hearing, the court found that Deputy Guy acted reasonably under the circumstances and was not guilty of any contributory negligence. It also concluded that "but for the actions of Jason this accident would not have occurred. It is the proximate cause of the accident that did occur." On that basis, it entered a restitution judgment for the amount of damage to the police cruiser.

In seeking to upset that judgment, appellants argue that (1) the Legislature never intended § 3–829 to cover this kind of situation, and (2) the "Fireman's Rule" precludes liability. We find merit in the first argument and therefore need not consider the second.

In *In re Zephrin D.*, 69 Md.App. 755, 519 A.2d 806 (1987), we considered whether, in a case where a juvenile had stolen and defaced a car, the juvenile court could include in a restitution order against the child's mother the cost to the owner of renting a replacement vehicle while his car, eventually recovered, was being repaired. At the time, § 3–829 did not contain the language that we emphasized above. Section 3–829(a) provided for restitution only where the damage to the property occurred "during" the commission of the delinquent act. Although the victim in that case was a private citizen, we note as well that there was no provision at the time for payment to any governmental entity. Section 3–829(c)(ii) stated that "[a]s to property damaged," the restitution could not exceed the lesser of the fair market value of the property or $5,000.

Reading the statute as it then existed, we concluded that the statute was not intended to create a civil cause of action for the victim or to turn the juvenile court into a forum for damage suits. Rather, it was a specific statutory scheme for providing partial restitution to victims of delinquent

acts. The amount of restitution was limited; the victim had no right to initiate a claim for restitution; and the kind of damage for which restitution could be awarded was limited. In that regard, we stressed that only property damaged or destroyed "during" the commission of the delinquent act could be considered and that, under subsection (c)(ii), only damage done directly to that property could be recompensed under the statute. For those reasons, we held that the cost of renting a replacement vehicle could not be included in a restitution order.

The Opinion in *Zephrin D.* was filed on January 14, 1987. One month later, a bill was introduced into the General Assembly to expand the scope of the statute. That bill, which was enacted as 1987 Md.Laws, ch. 344, added the emphasized language and expanded the statute in other ways as well that are not relevant to this appeal. Two of the major features of the bill, noted in both the Bill Analysis prepared by the Department of Legislative Reference and the Committee Report of the Senate Judicial Proceedings Committee, were to allow restitution when the damage was caused not just "during" but also "as a result of" the delinquent act and specifically to allow restitution in favor of a governmental entity.

Although the scope of the statute was clearly expanded by the 1987 enactment, it was not expanded sufficiently to encompass this episode. We say that for two reasons.

The statute is worded in the active voice. In order to enter a restitution judgment, the court must find that "*a child* has committed a delinquent act and during or as a result of the commission of that delinquent act *has ... damaged*, destroyed ... or substantially decreased the value of *the property of another....*" (Emphasis added.) As worded, three findings (and evidence to justify them) are required to support a restitution judgment: (1) that the child committed a delinquent act; (2) that the child damaged, destroyed, or decreased the value of another's property; and (3) that such damage, destruction, or diminution in

value caused by the child occurred during or as a result of the delinquent act.

The problem here is with the second required finding. The statute does not allow restitution simply because property damage results from a delinquent act. It requires that the child have caused that damage. That did not happen here. Jason's conduct did not damage the sheriff's car; Deputy Guy's conduct did. In order to sustain the judgment, we would have to read the statute as though that last part of it read "and during or as a result of the commission of that delinquent act the property of another was damaged or destroyed, or its value was substantially decreased." But that is not what it says.

Because there was no evidence that Jason damaged the sheriff's car, the restitution judgment was entered in error and must be vacated.

The second problem here is that, by proceeding only on the operation of an unregistered vehicle charge and placing the "eluding an officer" charge on the "stet" docket, the State destroyed the required nexus between the delinquent act and the damage. The accident and consequential damage did not result from Jason's driving an unregistered vehicle but rather from his attempt to flee from the officers. *That* was the delinquent act which led to the chase into the woods, but, as noted, that charge was not prosecuted and no finding as to it was made. Even if we were to read the statute as the State asks, therefore, it would be of no help in this case.

RESTITUTION JUDGMENT VACATED; ST. MARY'S COUNTY PAY THE COSTS.