653 A.2d 512

In re DANIEL S.

In re KEVIN S.

In re JOHN L.

In re STEPHEN K.

In re CYNTHIA K.

Nos. 730 to 734, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Feb. 7, 1995.

David N. Pasti, Assigned Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant, Daniel S.

David E. Kindermann, Rockville, for appellant, Kevin S.

Stephen D. Weiss, Gaithersburg, for appellant, John L.

Joseph P. Malinowski, Rockville, for appellants, Stephen and Cynthia K.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Submitted before MOYLAN, WENNER and FISCHER, JJ.

WENNER, Judge.

Appellants, Daniel S., Kevin S., John L., Stephen K., and Cynthia K., were found by Juvenile Court for Montgomery County to have been involved in malicious destruction of property, conspiracy to commit theft, and conspiracy to commit malicious destruction of property.[1] Appellants were placed on probation, ordered to perform 150 hours of community service and make restitution of $581.00. On appeal, appellants present us with four questions, which we have restated as follows:

I.   Was the evidence insufficient to support the juvenile court's finding that each appellant committed the delinquent act of malicious destruction of property?

II.  Was the evidence insufficient to support the juvenile court's finding that each appellant committed the delinquent act of conspiracy to commit malicious destruction of property and theft over $300?

III. Did the lower court commit reversible error at the restitution hearing by refusing to distinguish between

---

1. In Montgomery County, the District Court of Maryland acts as Juvenile Court.

negligently damaged property and intentionally damaged property?

IV. Did the lower court commit reversible error in refusing appellant John L.'s request for discovery?

Responding to each question in the negative, we shall affirm the judgments of the district court.

## Facts

In July 1992, Samur Masri ("Masri") was on a prolonged vacation. In mid-August, while Masri was still away, Ted. A. entered Masri's home with Cynthia K., John. L., Stephen K., and three others; all entered by using a key. Later that evening, Daniel S. and Kevin S. accepted an invitation "to a party at Ted's house."

Over the next three or four days, several other juveniles entered the Masri house. On 19 August 1992, the Montgomery County police when they responded to an anonymous tip that Ted A.[2] had broken into the Masri house, found Ted A. on the premises and took him into custody. After inspecting the Masri house, Officer Darren McGee reported that there appeared to have been a party that had not been cleaned up.

On 20 August 1992, Masri returned from vacation and found: sticky and damaged linoleum floors; cigarette burns, brown spots, and circular dents on the floor and breakfast table; and damage to a coffee table. Masri also noticed that liquor, soda, and food were missing.

Appellants were charged with having been involved in trespassing, destruction of property, conspiracy to commit malicious destruction of property, and theft over $300. A joint adjudicatory hearing was conducted on 28–29 September 1993, and appellants were found involved in malicious destruction of property, conspiracy to commit malicious destruction of property and theft over $300. This consolidated appeal followed.

---

2. At that time Ted A. was a reported runaway.

## Discussion

### I.

Appellants first contend that there was insufficient evidence to find them involved in the delinquent act of malicious destruction of property. When reviewing the sufficiency of the evidence, we merely ask whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831 (1990). As in a criminal proceeding, commission of a delinquent act must be proved beyond a reasonable doubt. Maryland Rule 914(e)(1).

Md.Code (1957, Supp.1994), Art. 27, § 111(a) provides that "[a]ny person who shall wilfully and maliciously destroy, injure, deface or molest any real or personal property of another shall be deemed guilty of a misdemeanor." As malicious destruction of property is a specific intent crime, it "requires both a deliberate intention to injure the property of another and malice." *Shell v. State,* 307 Md. 46, 68, 512 A.2d 358 (1986); *In re Taka C.,* 331 Md. 80, 84, 626 A.2d 366 (1993).

Appellants point out that none of the evidence presented by the State directly linked them to the damage found in the Masri house. While appellants concede that "[t]he State elicited testimony that damage did occur in the Masri home" and "[a]ppellant's [sic] were in the home at some point in time," they urge that "to conclude that the damage occurred while the Appellant's [sic] were present and that they participated in causing the damage" constitutes reversible error. We disagree.

As the Court of Appeals said in *Wilson, supra* 319 Md. at 536, 573 A.2d 831, circumstantial evidence of a crime is sufficient to sustain a conviction. Moreover, we said in *Metz v. State,* 9 Md.App. 15, 262 A.2d 331 (1970) that " '[t]he law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact my be inferred.' " *Id.* at 21–22, 262 A.2d 331 (quoting *Nichols*

*v. State,* 5 Md.App. 340, 350, 247 A.2d 722 (1968), *cert. denied,* 253 Md. 735 (1969)). At the adjudicatory hearing, Officer McGee testified that appellants admitted having been in Masri's house during his absence. Further, the damage Masri found upon his return was more than sufficient for the juvenile court to conclude, as it obviously did, that under "the totality of the circumstances[,] . . . there was . . . deliberate damage to some of [Masri's] property" totalling approximately $8,100.00:

> In this case you have I would say what's a mixed bag if I can use the term of some . . . what appears at this posture of the case again negligent damage or injury to the property, the furnishings and what have you and also what I consider could be well concluded, well construed and again at this posture of the case to be willful, malicious damage to the property. Keep in mind you had damage to a kitchen table that was described by Mr. Masri as what appeared to be *deliberate pounding in,* banging in markings but what looked like Coke bottle caps or beer caps. We don't know what.
>
> [Masri] referred to *bashing of a table.* Of a leg of a table if I recall. Something that is difficult to conclude as just an accidental thing.
>
> There was a *carving of the linoleum* to . . . for whatever reason carving pieces out of the linoleum floor. Indications of *cigarette burns* where the cigarettes we can conclude at this posture were *stepped, stomped, ground into the linoleum floor.* There was the tic-tac-toe or whatever, scratches on the darkening film that was placed on the . . . inside of the sliding glass door. . . .
>
> . . . A coffee table where *about a foot or so of the veneer was peeled off of the table.* It's hard to . . . consider that any of this would be accidental or negligent. (Emphasis added.)

Consequently, the juvenile court was not clearly erroneous in concluding that appellants had been involved in maliciously damaging Masri's property. There was no error.

## II.

Appellants next contend that the evidence was insufficient to support the juvenile court's finding that they had been involved in the delinquent acts of conspiracy to commit malicious destruction of property and theft over $300. In support of their contention, appellants assert that they conspired, if at all, merely "to have a party," and that does not "amount to a criminal scheme from which everyone can be held accountable for a crime committed in furtherance thereof." Again, we disagree.

We have held that "the gist of a conspiracy is the entering into of an illegal scheme or design, and once this occurs, the crime is complete without the doing of an overt act." *Harper v. State,* 6 Md.App. 1, 3, 249 A.2d 511 (1969); *Rich v. State,* 93 Md.App. 142, 151, 611 A.2d 1034 (1992) ("[c]onspiracy is . . . the combination of two or more persons, who, by some concerted action, seek to accomplish some unlawful purpose, or lawful purpose by unlawful means"). Moreover, a "conspiracy may be proved by circumstantial evidence from which an inference of common design may be drawn." *Harper, supra* 6 Md.App. at 3, 249 A.2d 511; *see Rich, supra* 93 Md.App. at 152, 611 A.2d 1034. Consequently, "[t]he specific questions properly involved in [appellants'] attack on the sufficiency of the evidence are: (1) Was there evidence that [appellants] had a common plan? (2) Was the common plan a plan to [commit theft and malicious destruction of property]?" *Harper, supra* 6 Md.App. at 3-4, 249 A.2d 511.

On the other hand, the State points out that there was evidence before the juvenile court that appellants were in the Masri house together, and were seen talking, watching television, smoking, and drinking alcoholic beverages taken from a kitchen cabinet. In Maryland, it is beyond cavil that " '[c]oncurrence of action on a material point is sufficient to enable a jury to presume concurrence of sentiment, and from this the actual fact of a conspiracy may be inferred.' " *Rich, supra* 93 Md.App. at 152, 611 A.2d 1034 (quoting *Lawrence v. State,* 103 Md. 17, 22, 63 A. 96 (1906)). Here, the juvenile

court found that appellants "were in the [Masri] house ... for a significant period of time" and "acted in concert in the sense that they went in there and ... utilized the property ... for sleeping, for talking, for watching TV, whatever the reason." There was also evidence that appellants consumed alcoholic beverages,[3] soda and food while in Masri's house. Finally, there was evidence that Masri's house was damaged during appellants' presence, and that women's clothing was removed from the house. *See Rich, supra* 93 Md.App. at 152, 611 A.2d 1034 ("overt acts in the commission of a crime are relevant evidence of the existence of a conspiracy"). Consequently, there was sufficient circumstantial evidence to support a rational inference that appellants were involved in a conspiracy to commit malicious destruction of property and theft over $300.[4]

## III.

Appellants also contend that the juvenile court committed reversible error by failing to distinguish between intentionally and negligently damaging Masri's house, and ordering restitution of $581.00. They are wrong. Md.Code (1974,

---

**3.** While appellants contend that "the testimony of all the State's witnesses specifically refers to Ted A. and Kelly D. as the only individuals that were seen drinking the liquor," there was sufficient circumstantial evidence for the juvenile court to find that all of the appellants conspired to consume alcohol at the Masri house. As the juvenile court noted:

> ... Maybe some did less, some did more. That's obvious.... Maybe one or two didn't do anything. The problem is nobody has acknowledged doing anything in the home. Suddenly the alcohol and the sodas evaporated ... and nobody acknowledges doing any of those things ... But it happened. [A]nd so I feel that it was all a part of a willful and malicious act by all of the parties....

**4.** Appellants also endeavor to circumvent their involvement in conspiracy to commit theft over $300 by characterizing any theft from the Masri house as petty, alleging that "the only items missing [from Masri's house] were some liquor, soda, food, and women's clothing." Unfortunately for appellants, they point to no evidence indicating that these items had a value of *less* than $300.00.

Supp.1994), § 3–829(a)(1) of the Cts. & Jud. Proc. Article provides in relevant part:

(1) The court may enter a judgment of restitution against the parent of a child, the child, or both in any case in which the court finds a child has committed a delinquent act and during or as a result of the commission of that delinquent act has:

(i) Stolen, damaged, destroyed . . . or substantially decreased the value of the property of another[.]

(Emphasis added.) *See In re Jason W.,* 94 Md.App. 731, 734, 619 A.2d 163, *cert. dismissed,* 332 Md. 509, 632 A.2d 767 (1993).

In *In Re Jason W., supra* 94 Md.App. at 734–737, 619 A.2d 163, we held that "three findings . . . are required to support a restitution judgment: (1) that the child committed a delinquent act; (2) that the child damaged, destroyed, or decreased the value of another's property; and (3) that such damage, destruction, or diminution in value caused by the child occurred during or as a result of the delinquent act." Accordingly, we hold that there was sufficient evidence for the juvenile court to find that *all* of the damage, whether negligent or intentional, occurred *"during or as a result of"* appellants' delinquent acts. There was no error.[5]

## IV.

Appellants finally contend that it was reversible error for the juvenile court to deny John L.'s request for discovery. In support of their contention, however, appellants simply revisit

---

5. We also note that appellants *agreed* on restitution of $581.00:

. . . Your Honor, I . . . believe I speak for the balance of Counsel in this matter. We have all, through our clients, . . . agree[d] to a restitution figure of $581.00 representing $400.00 as an agreed upon amount to Allstate and $181.00 to Mr. Masri for his out of pocket expenses.

&ast; &ast; &ast; &ast; &ast; &ast;

In order to alleviate the necessity for a restitution hearing[,] Counsel and I would indicate that we've all agreed to the $581.00[.] [T. 6–7, 17]

their earlier arguments with respect to sufficiency of the evidence. Thus, we need not consider the issue.

**JUDGMENTS AFFIRMED. COSTS TO BE SHARED EQUALLY BY ALL APPELLANTS.**