762 A.2d 572

**In re LEVON A.**

**No. 10, Sept. Term, 2000.**

Court of Appeals of Maryland.

Nov. 17, 2000.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE,
RODOWSKY,* RAKER, WILNER, CATHELL and
ROBERT L. KARWACKI (retired, specially assigned), JJ.

WILNER, Judge.

█ The issue before us is whether the parent of a child who committed the delinquent act of unauthorized use of an automobile, in violation of Maryland Code (1957, 1996 Repl. Vol.), Article 27, § 349, may be held liable for restitution for damage done to the car if the child (1) did not participate in the initial theft or appropriation of the car, (2) did nothing, directly or indirectly, to cause the car to be damaged, and (3) was found culpable only by virtue of his having become and remained a passenger in the car knowing (or having reason to know) that it was stolen. Twice, the Court of Special Appeals answered that question in the affirmative. We disagree and shall reverse.

## BACKGROUND

On the morning of October 17, 1996, H. Edward Andrews, III drove to the District Court building on North Avenue in Baltimore City. Although he locked and secured his car, when he returned less than an hour later, the vehicle was gone. Evidence presented before a juvenile court master showed that 15-year old Antonio M. took the car, apparently by breaking a window, overcoming the "Club" security device, and "popping" the ignition device. While driving the car, he saw petitioner's son, Levon A., walking home from school and offered him a ride. Levon got into the car. Around 2:15 that afternoon, as the boys continued on their journey, following a stop at Antonio's home, a police officer observed the vehicle and noticed that it contained the two boys who were too short to see over the dashboard and steering wheel. After learning that the car had been reported stolen, he began following it.

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Antonio observed the police car and made an effort to elude it. The chase ended when Antonio entered a dead-end street, attempted to make a quick turn into a private driveway, and ran into some shrubbery and a fence. Both boys attempted to flee but were apprehended. When Mr. Andrews recovered the vehicle at the police impound lot, he noticed not only the damage from the collision, to the front and right side, but also that the ignition device was missing, glass from the right passenger window littered the seat and floor, and a number of items—audio tapes, a blanket, the "Club" device used to secure the car, an ashtray with $70 in money, and a mug— were missing.

Levon was charged, as a delinquent child, with a variety of theft-related and malicious destruction offenses. Among other things, the petition sought restitution against Levon's mother, petitioner here. At the adjudicatory hearing before the master, Levon contended that he did not realize that the vehicle had been stolen until he saw the police in pursuit. According to him, he simply accepted a ride home from school from a friend, who he believed was old enough to drive. He said that he thought the car was owned by one of Antonio's relatives. He further noted that once they left Antonio's house, Antonio told him that the car was stolen, but he thought Antonio was just joking. After listening to the evidence, the master concluded that only one of the eight counts was sustained—Count 4, charging unauthorized use in violation of Maryland Code, Article 27, § 349, *i.e,* that Levon took and carried the vehicle away with the intent to deprive the owner, temporarily, of the use and possession of the property. In making his finding as to the unauthorized use, the master found that Levon had been told by Antonio that the car was stolen. The master disbelieved Levon's assertion that he did not see the missing ignition or broken window and concluded that Levon, "at least in this matter *should have known* the car was stolen." (Emphasis added.)

Evidence taken at a restitution hearing held a month later established that State Farm Insurance Company had paid $1,690 to repair the damage to the vehicle and that the value

of the items taken from the car was $443. Citing *In Re Jason W.*, 94 Md.App. 731, 619 A.2d 163, *cert. granted,* 331 Md. 178, 626 A.2d 967, *cert. dismissed,* 332 Md. 509, 632 A.2d 767 (1993), and *In Re Jose S.*, 304 Md. 396, 499 A.2d 936 (1985), petitioner argued that she could not be held responsible for either item of damage, as Levon had not been shown to have caused any of those losses. The master responded:

"The real question is why we're here right now talking about this money. Why? Because this young man hopped into a vehicle *that he knew was stolen.* That's the reason we're here today. No other reason. And now somebody has got to pay some money."

After giving some consideration to petitioner's circumstances, the master ordered that Levon pay restitution in the amount of $443—the value of the missing items—to Mr. Andrews and gave him 18 months within which to make the payment. The master also entered a $1,690 judgment of restitution in favor of State Farm and against Levon and petitioner, jointly and severally.[1] When asked by petitioner what "causal link" the master found between Levon's actions and the damage, the master replied that he had "already explained that." When asked how Levon, at age 14 with no employment, was expected to pay $443 to Mr. Andrews within the 18 month period, the master indicated that he expected Levon to "use his ingenuity" and to obtain employment when he became 15.

Petitioner filed exceptions which, after a hearing, the court overruled. Relying on *In Re Gloria T.*, 73 Md.App. 28, 532 A.2d 1095 (1987), *cert. denied,* 311 Md. 718, 537 A.2d 272 (1988), the court concluded that, in a case of unauthorized use,

---

1. The docket entry for March 25, 1997—the date of the restitution hearing—shows that the restitution order pertaining to the $443 ran only against Levon but that the judgment of restitution for $1,690 in favor of State Farm Insurance Co. was against both Levon and petitioner. A docket entry for September 2, 1997 records a "Corrected court order" showing the reverse—that the restitution order for $443 was against Levon and petitioner and that the judgment for $1,690 was against petitioner alone.

"occupying a stolen car without the permission and consent of the owner and the car sustains damages, all persons found on or about the car are, in fact, chargeable as principals and all are equally liable."

The Court of Special Appeals agreed in part and disagreed in part with the conclusions of the juvenile court. *In Re Levon A.*, 124 Md.App. 103, 720 A.2d 1232 (1998). It found neither *Jason W.* nor *Gloria T.* controlling, and determined that (1) restitution for the damage done to the car while Levon was a passenger in it was permissible based on Levon's aider and abettor status under the unauthorized use statute, (2) restitution for damages caused before Levon became a passenger was not authorized, and (3) in light of the evidence regarding petitioner's financial circumstances and ability to pay, the court abused its discretion in requiring her to pay for all of the losses. In that regard, the appellate court held that "[c]learly, Ms. A. had no ability to comply with this particular restitution order, unless she sacrificed the well being of her children." *Id.* at 147, 720 A.2d at 1253.

The court noted that the unauthorized use statute, Article 27, § 349, made aiders and abettors equally guilty with the principal perpetrator and thus "equally liable for the full range of penalties pr[e]scribed by the statute." *Id.* at 139, 720 A.2d at 1249. One of the penalties provided for in § 349 was that the offender was to restore the property taken, or, if unable to do so, pay the owner the full value of it. Accordingly, the court held that the Juvenile Court "lawfully awarded restitution for those damages caused during or as a result of the unauthorized use." *Id.*

The problem noted by the appellate court was that part of the restitution was for damages that occurred as a result of the initial theft, in which Levon had no part, rather than the unauthorized use. In particular, the court referred to the cost of repairing the ignition and the broken glass, which arose from the initial theft, as well as the value of the items of personalty "that most likely were damaged or stolen in connection with the theft." *Id.* at 136–37, 720 A.2d at 1248. As

to those elements, the court held that, "[g]iven the finding that Levon did not commit the theft, we agree with appellants that they cannot be ordered to pay restitution for damages directly resulting from the theft." *Id.* at 137, 720 A.2d at 1248. Because, in its restitution judgment, the juvenile court did not differentiate between damages sustained in connection with the theft and those which, in the appellate court's view, occurred during or as a result of the unauthorized use, the Court of Special Appeals vacated the order of restitution and remanded for the juvenile court (1) to exclude any damages relating solely to the theft, and (2) to consider an order of restitution commensurate with petitioner's ability to pay. *Id.* at 141, 147, 720 A.2d at 1250, 1253.

At the hearing on remand, the State conceded that $498 of the $1,690 claimed by State Farm related to damage arising solely from the theft, leaving the insurance claim at $1,192. It later agreed to reduce the $443 restitution order running in favor of Mr. Andrews by $80. Petitioner moved to dismiss the entire claim on the ground that the State had failed to prove any causal connection between Levon's conduct and State Farm's claim. The court denied the motion, believing that the Court of Special Appeals had already rejected that argument and had remanded the case for the limited purpose of excising from the restitution order those items arising solely from the theft and determining the extent to which petitioner was able to afford to pay restitution. Evidence was then offered regarding petitioner's financial circumstances. In its final ruling, the court left the restitution order against Levon intact, concluding that the only issue before it dealt with the restitution to be paid by petitioner. In that regard, it concluded that she could afford to pay no more than $750 and, on June 16, 1999, entered a restitution judgment against her and in favor of Mr. Andrews (rather than State Farm) for $750.

Petitioner and Levon again appealed. They made no complaint about the new calculations or the *amount* of the restitution, but simply asked the Court of Special Appeals to reconsider its earlier ruling. That, the court refused to do, and, in the absence of any other alleged error, affirmed the judgment.

We granted *certiorari* to determine the broader issue twice raised in both the trial and appellate courts—whether any restitution order against petitioner is permissible under the circumstances of this case.

## DISCUSSION

### *Preliminary Issues*

Before discussing the substantive issues in the case, there are two preliminary matters worthy of comment.

First, there seems to be some ambiguity in the record as to who, in the end, has been ordered to pay what to whom. As we indicated, the court initially, in March, 1997, directed Levon to pay $443 to Mr. Andrews, over a period of 18 months, and entered a judgment against him and his mother and in favor of State Farm for $1,690. In September, 1997, a "corrected order" was filed that directed Levon and petitioner to pay the $443 to Mr. Andrews and made the $1,690 judgment in favor of State Farm run against only petitioner. On May 20, 1999, following the hearing on remand, the court stated that the restitution order against Levon, for $443, would remain intact, but it entered a new judgment in the amount of $750 against petitioner but in favor of petitioner. On June 16, 1999, the court corrected *that* obvious error but committed another when it made the $750 judgment against petitioner run in favor of Mr. Andrews, rather than State Farm.

No one has complained about that aspect of the order. We cannot help but observe, however, that the loss claimed by Mr. Andrews never exceeded $443 and that, in conformance with the first mandate of the Court of Special Appeals, the State stipulated to an $80 reduction in that amount. On its face, without regard to any other error, the final judgment entered was incorrect. The apparent intent was to leave the restitution order against Levon, in favor of Mr. Andrews, alone, and to deal only with the judgment against petitioner in favor of State Farm. The final order in the case, however, has the

judgment for $750 running in favor of Mr. Andrews. For the reasons to follow, that "glitch" will become moot.

■ The second preliminary matter is a procedural one raised by the State. It notes, correctly, that the substantive determination that restitution was permissible for damage and losses that occurred after Levon became a passenger in the car was made by the Court of Special Appeals in the first appeal and that petitioner never sought either reconsideration of that ruling in accordance with Maryland Rule 8–605 or review by this Court through a petition for *certiorari*. In the second appeal, it advises, petitioner did not challenge any new finding made by the juvenile court upon remand, but simply asked the Court of Special Appeals to reconsider and revise the ruling made in the first appeal. It is inappropriate, the State claims, for this Court, on review of the second decision by the Court of Special Appeals, to deal with the substantive issue raised in the first appeal. Essentially, the State is invoking the "law of the case" doctrine.

We dealt with this issue in *Loveday v. State,* 296 Md. 226, 462 A.2d 58 (1983), which the State acknowledges but seeks to distinguish. In *Loveday,* a defendant, facing the prospect of a mandatory 25–year sentence if convicted of the pending charges, was offered a plea bargain under which, in return for a plea of guilty, the State would not file the notice requisite to the mandatory sentence and would make no recommendation as to sentence. The probable sentence under that circumstance was expected to be 10 years. Loveday rejected the offer, and, upon his trial and conviction, the State filed the notice and sought the mandatory 25–year sentence, which the trial court declined to impose. On the State's appeal, the Court of Special Appeals rejected Loveday's argument that imposition of the mandatory sentence after the State had offered considerably better terms would violate his right to due process under the 14th Amendment to the U.S. Constitution and remanded for resentencing. *State v. Loveday,* 48 Md.App. 478, 427 A.2d 1087 (1981). The trial court then imposed the 25–year sentence, whereupon Loveday appealed,

arguing that the sentence violated his right to due process under the Maryland Constitution. Treating the issue raised in the second appeal as essentially the same as that adjudicated in the first appeal, the appellate court applied the "law of the case" doctrine and affirmed.

We granted *certiorari* to review the substantive issue but dealt first with whether the "law of the case" doctrine precluded such review in this Court. We noted that, prior to the creation of the intermediate appellate court, when all appeals of right were heard by this Court, we had "refused to allow successive appeals in a case that posited the same questions that had been previously decided by this Court in a prior appeal of the same case" and had "forbade the parties, on any subsequent appeal of the same case, to raise any question that could have been raised in the previous appeal on the record as it existed in the trial court." *Loveday, supra,* 296 Md. at 229, 462 A.2d at 59. Without disturbing that principle as it would apply in the intermediate appellate court, we concluded that "the law of the case doctrine does not apply to this court which is required to review judgments of subordinate courts." *Id.* at 234, 462 A.2d at 61. Thus, although, in a second appeal, the Court of Special Appeals might properly apply the "law of the case" doctrine and decline to review an issue that was, or could have been, raised in an earlier appeal in the same case, that doctrine would not preclude this Court, in the second appeal, from reviewing that issue. To rule otherwise, we noted, would thwart this Court's statutory authority to review the judgments of the Court of Special Appeals.

The State seeks to distinguish *Loveday* on the ground that the issue raised in the second appeal in that case (State due process) was different from the one raised in the first appeal (Federal due process). That does not distinguish the case. Our right to review the judgment of the intermediate appellate court exists whether the issue raised in the second appeal was the same as or different from that raised in the first appeal.

### *Liability for Restitution*

At different times during this litigation, two sources of authority for the restitution judgments have been invoked— the unauthorized use statute itself, Article 27, § 349, and the restitution law set forth in Article 27, § 808, as it existed when the conduct at issue occurred.[2] At the State's urging, the Court of Special Appeals effectively merged or "piggy-backed" those provisions to provide a basis for the restitution ordered in this case. They cannot be so combined.

Article 27, § 349 provides, in relevant part, that any person, including any aider or abettor, who enters upon the premises of another and, against the other's will and consent, takes and carries away a motor vehicle or other property, out of the other's custody or use, "shall *upon conviction thereof in any of the courts of this State having criminal jurisdiction* be adjudged guilty of a misdemeanor, and shall restore the property so taken and carried away, or, if unable to do so, shall pay to the owner or owners the full value thereof" and is subject to a fine of between $50 and $100 and imprisonment for between six months and four years. (Emphasis added.)

Section 808, dealing specifically with restitution that may be ordered by a juvenile court, provided, in relevant part, that the juvenile court may enter a judgment of restitution against a child, the parent of a child, or both, "in any case in which the court finds a child has committed a delinquent act and during or as a result of the commission of that delinquent act has . . . [s]tolen, damaged, destroyed, converted, unlawfully obtained, or substantially decreased the value of the property of another."

---

**2.** The conduct leading to the charges against Levon occurred on October 17, 1996. At that time, the provisions allowing restitution against a child and the child's parents for damage caused as a result of delinquent acts committed by the child were codified in § 808 of Article 27. In 1997, those provisions were substantially rewritten and placed in § 807. We agree with the parties that this case must be decided on the basis of the law stated in § 808 as it existed in October, 1996.

In approving the restitution judgment in this case, the Court of Special Appeals turned first to § 349 and concluded that a person is guilty of unauthorized use of a motor vehicle if, knowing that the car has been stolen, the person participates in the continued use of it after the initial taking, as that continued participation manifests an intent to deprive the owner of possession of the vehicle. That is a correct statement. *Anello v. State,* 201 Md. 164, 167–68, 93 A.2d 71, 72 (1952); *Spence v. State,* 224 Md. 17, 19, 165 A.2d 917, 918 (1960). The appellate court then noted the further provision in § 349 requiring a violator to "restore the property so taken and carried away" or, if unable to do so "shall pay the owner or owners the full value thereof" and held that "[o]n this basis, the juvenile court lawfully awarded restitution for those damages caused during or as a result of the unauthorized use." *Levon A., supra,* 124 Md.App. at 139, 720 A.2d at 1249. That is where the court went astray.

 There is no doubt that, based on his participation as a passenger in the car, with knowledge that it was stolen, Levon committed a violation of § 349 and thus committed a delinquent act. Had he been an adult, charged and convicted in criminal court, he could have been required, as one jointly liable with Antonio, to pay to Mr. Andrews the full value of the property taken and carried away. That restoration/restitution provision does not apply to the situation at hand, however, for at least three reasons. For one thing, it requires a "conviction" in a court "having criminal jurisdiction." A finding that a juvenile committed a delinquent act is *not* a conviction, and a juvenile court does *not* have criminal jurisdiction. *See In Re Victor B.,* 336 Md. 85, 92–94, 646 A.2d 1012, 1015–16 (1994). Moreover, the restoration or payment provision in § 349 applies only to the person or persons who commit the criminal act and does not authorize, or even purport to authorize, a restitution order against the parents of such persons. Finally, the restoration or payment authorized by § 349 is to be made "to the owner or owners," and, to the extent that, despite its actual wording, the judgment in this case was intended to run in favor of State Farm, rather than Mr. Andrews, it would not

be authorized by § 349. Section 349 does not provide a self-contained basis for a restitution order by a juvenile court against the parent of a child found only to have committed a delinquent act.

Nor did § 808. As the Court of Special Appeals pointed out in *In Re Jason W., supra,* 94 Md.App. 731, 736–37, 619 A.2d 163, 166:

"The statute is worded in the active voice. In order to enter a restitution judgment, the court must find that '*a child* has committed a delinquent act and during or as a result of the commission of that delinquent act *has* ... *damaged,* destroyed ... or substantially decreased the value of *the property of another....* ' As worded, three findings (and evidence to justify them) are required to support a restitution judgment: (1) that the child committed a delinquent act; (2) that the child damaged, destroyed, or decreased the value of another's property; and (3) that such damage, destruction, or diminution in value caused by the child occurred during or as a result of the delinquent act."

(Emphasis added.)

Upon that interpretation, the court in *Jason W.* went on to conclude that "[t]he statute does not allow restitution simply because property damage results from a delinquent act. It requires that the child have caused that damage." *Id.* at 737, 619 A.2d at 166.

*Jason W.* is a case that is close in point. A sheriff noticed a motorcycle being driven on a public highway without registration tags and, together with another sheriff, gave chase. The cyclist, Jason W., sped up, went through a school yard, and began driving down a path through some woods, with the two sheriff's vehicles in pursuit. One of the sheriff's vehicles was a standard police cruiser, and, while driving it through the woods, the sheriff collided with a tree, causing extensive damage to the car. Jason was captured and charged, in juvenile court, with a variety of offenses. Through a plea agreement, he was found delinquent with respect to only one of them—operating an unregistered vehicle. Upon that find-

ing, Jason and his mother were ordered to pay restitution for the damage done to the sheriff's car. The Court of Special Appeals reversed, noting that (1) Jason's conduct did not damage the sheriff's car, and (2) while the damage might be said to have resulted from Jason's fleeing and eluding the officers, it did not ensue from his merely driving an unregistered vehicle, which was the only delinquent act found. *Id.*

The holding in *Jason W.* is consistent with the decision of this Court in *In Re Jose S., supra,* 304 Md. 396, 499 A.2d 936 (1985). There, two boys, Jose and Samuel, broke into a home and stole goods worth $829. They were each charged in juvenile court with daytime housebreaking, breaking and entering, and theft of goods of a value *under* $300. Samuel admitted to the breaking and entering, and all other charges against him were dismissed. Jose admitted to theft of goods of a value under $300, and all other charges against him were dismissed. The court then entered restitution judgments against Samuel and his mother for $414.50 (one-half of the value of the goods taken) and against Jose and his mother, in a like amount. We reversed the judgment against Samuel and his mother and directed a modification of the judgment against Jose and his mother. As to Samuel, we noted that there was no evidence that he stole anything; the only charge, and the only evidence, dealt with his breaking into the house. We agreed with his mother's contention that "the court could not order restitution against her as the parent of Samuel B. without first finding that her child had 'stolen, damaged, or destroyed' the property." *Id.* at 401, 499 A.2d at 939. For similar reasons, we concluded that the judgment against Jose and his mother could not exceed $300, for the evidence failed to establish that anything more than that was taken by Jose. *Id.* at 400, 499 A.2d at 938.

■ The State urges that the damage to the Andrews vehicle "was the direct result of Levon A.'s unauthorized use of that vehicle," but that is simply not so. The damage (other than that resulting from the process of breaking into and stealing the car, which has already been excluded from consid-

eration) resulted entirely from the collision with the shrubbery and the fence. There is no evidence that Levon, as a passive passenger in the car, had anything to do with that collision. There is nothing to show that he urged Antonio on, that he directed Antonio's actions, that he ever controlled, or attempted to control, the vehicle, or that he did anything to cause Antonio to drive into the obstructions. Had there been any such evidence, the court might properly have found a causal connection between Levon's delinquent behavior and the damage. *See In Re Gloria T., supra,* 73 Md.App. 28, 532 A.2d 1095, *cert. denied,* 311 Md. 718, 537 A.2d 272 (1988). In the absence of that evidence, however, there was no basis for the restitution judgment against petitioner.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE JUDGMENT OF RESTITUTION AGAINST PETITIONER; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

RAKER and CATHELL, JJ., dissent.

RAKER, Judge, dissenting.

I respectfully dissent. Levon A. committed a delinquent act and, during or as a result of the commission of that delinquent act, he substantially damaged or decreased the value of the property of another. Accordingly, I would affirm the judgment of restitution against both Levon A. and Mrs. A., his mother.

The majority finds that Levon "did nothing, directly or indirectly, to cause the car to be damaged." Maj. op. at 629. The majority refers to Levon as "a passive passenger," maj. op. at 641, implying that he could not have *caused* the damage to the vehicle—that he did not have anything to do with the collision. This theory of causation, in my opinion, is too narrow.

The power to impose restitution is derived from statutes. In the juvenile context, at the time of this offense, restitution

could be imposed only for losses in which the court found that a child had committed a delinquent act and, during or as a result of the commission of that act, the child had stolen, damaged, destroyed, converted, unlawfully obtained, or substantially decreased the value of the property of another. *See* Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 808 (current version at Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Art. 27, § 807). Absent a plea agreement, the award of restitution must be based upon a causal relationship between the delinquent act and the victim's loss or damages. To establish the causal connection, at a minimum, the damages or losses suffered must have been a foreseeable consequence of the juvenile's acts.

Levon was a passenger in a car driven by Antonio M., a 15–year old who obviously had no driver's license and no permission to operate the car. The ignition was "popped," and the window was broken. Antonio M. was driving when the two fled from the police, and the car was damaged when it collided into some shrubbery and a fence. Although, at the delinquency hearing, Levon denied knowing that the car was stolen, he was found to be delinquent as a result of his unauthorized use of a motor vehicle. That finding of delinquency is not before this Court, and the majority assumes, for the purposes of this appeal, that the finding of delinquency is valid. *See* maj. op. at 631.[1]

This case is not a situation where restitution was ordered simply because property damage resulted from a delinquent act. Levon A. was enjoying the common use of the stolen car with the driver, Antonio M. Unauthorized use of a vehicle is a high risk activity. Surely, Levon must have been able to

---

1. At the adjudicatory hearing, in finding Levon delinquent of unauthorized use, the master found that Levon "at least ... should have known the car was stolen," only later indicating, at the restitution hearing, that Levon had actually known that the car was stolen. Clearly, this discrepancy is concerning. Unfortunately, however, Petitioner has not raised the issue of the sufficiency of the basis for the finding of delinquency on appeal, so we must assume that it is valid. *Accord* maj. op. at 631 n. 1.

anticipate the likelihood of detection by law enforcement and a potential chase. Damage to Mr. Edwards's vehicle was certainly foreseeable, yet Levon continued with the joy ride. A teenager's shared unauthorized use of the vehicle with the driver supports and contributes to the damage that results. Without question, the damage to the vehicle occurred *during* the commission of the delinquent act. As a *result* of Levon's delinquent act, i.e., the unauthorized use of the motor vehicle, the car was damaged. As such, restitution was properly ordered.

The restitution statute in effect when this matter came before the trial court did not require that the damage or injury to property be caused solely by the hand of the juvenile. *See* § 808. Rather, the juvenile is responsible for restitution for any loss to the property that he or she causes or that is caused by a co-conspirator, aider, abettor, or other principal, so long as the injury sustained by the victim is of such a nature that a reasonable person could have foreseen or anticipated that the damage was a natural and probable consequence of the delinquent act.

Other jurisdictions similarly have construed the causation factor for the purposes of restitution consistently with the interpretation that I propose here. For example, the Washington Court of Appeals has consistently applied foreseeability and but-for causation analysis in interpreting the Washington Juvenile Justice Act, Wash.Rev.Code § 13.40.190(1) (2000),[2] which, like § 808, grants the authority to impose restitution to victims "who have suffered loss or damage *as a result of the offense committed by the respondent*" (emphasis added). In

---

2. The Washington restitution statute, unlike § 808, expressly makes all participants "jointly and severally liable." *See* Wash.Rev.Code § 13.40.190(1) (2000). Nonetheless, the Washington Court of Appeals' analysis on the relationship between the causation element of the restitution statute and the foreseeability of the resulting damage is still applicable here. In addition, as the Maryland unauthorized use statute makes aiders and abettors guilty as principles for the purpose of punishment, *see* Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Art. 27, § 349, Levon is individually responsible for the damage to the vehicle that resulted from its unauthorized use.

*State v. Barrett,* 54 Wash.App. 178, 773 P.2d 420 (1989), the court upheld the imposition of restitution against a juvenile who had pleaded guilty to taking a motor vehicle without permission for voluntarily riding as a passenger in the unlawfully taken car. The court held that there was a sufficient causal link between the conduct committed and the damage that occurred while he was a passenger in the car. *Accord State v. Harrington,* 56 Wash.App. 176, 782 P.2d 1101 (1989) (holding that a juvenile who had pleaded guilty only to possession of a stolen car, rather than theft, still had *caused* damage to the car because the damage occurred during, and was a foreseeable result of, his illegal possession of the car). Similarly, in *State v. Massey,* 106 Or.App. 242, 806 P.2d 193 (1991), *sentence rev'd on other grounds, cert. denied, State v. Massey,* 311 Or. 643, 815 P.2d 1273 (1991), the court held that it was not error to impose restitution against a defendant who was convicted of unauthorized use of a motor vehicle, where there was no evidence that he had taken the vehicle, because the victim's pecuniary damages were the result of the defendant's continued illegal possession of the car. In *People v. Rivera,* 135 Misc.2d 350, 515 N.Y.S.2d 397 (Dist.Ct.1987), the court held that a passenger in a stolen car, who had pleaded guilty to attempted unauthorized use of a vehicle and knew that the car was stolen, could be held liable to pay restitution for damage that resulted when the vehicle collided with another car, even though he had yelled at the driver to stop the car. *See id.* at 398 (finding that due care had no bearing on the issue of liability because the damage was still caused by the defendant's participation in the driver's unauthorized use of the motor vehicle).

The majority bases its decision, in part, on the case of *In Re Jose S.,* 304 Md. 396, 499 A.2d 936 (1985). *See* maj. op. at 640. That case, however, is distinguishable from the one at bar. In that case, the two boys were found delinquent for different acts that were separated chronologically—one had been found delinquent of breaking and entering and the other of theft. We held that the two boys could not be made to pay restitution for the acts that occurred *prior and subsequent to* their

respectivè participation in the illegal activity. In this case, Levon was a principal in the unauthorized use at all times after he discovered that the car was stolen, and he is responsible for the reasonably foreseeable damage that occurred. *See* Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Art. 27, § 349. The parallel to *Jose S.* in this case, if any, would be that Levon can not be made to pay restitution for damage that occurred to the vehicle prior to his participation in the unauthorized use—precisely the holding of the Court of Special Appeals.

Accordingly, I dissent.

Judge CATHELL has authorized me to state that he joins in the views expressed in this dissenting opinion.