773 A.2d 606

**Troy Jerell SMILEY**

v.

**STATE of Maryland.**

**No. 1622, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

June 4, 2001.

710

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief) Baltimore, for appellant.

Gary E. Bair, Asst. Atty. Gen. and Michelle W. Cole, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on brief) for appellee.

Submitted before SALMON, JAMES R. EYLER and KRAUSER, JJ.

JAMES R. EYLER, Judge.

A jury sitting in the Circuit Court for Wicomico County convicted appellant, Troy Jerell Smiley, of possession of cocaine with intent to distribute, possession of cocaine with intent to distribute within 1,000 feet of a school, and possession of cocaine.[1] Appellant raises one legal question but presents it as two issues. Specifically, appellant inquires:

I. Did the trial court err in declining to instruct the jury that he must have known that he was in a school zone in order to convict him of possession with intent to distribute in a school zone?

II. Was there sufficient evidence that he intended to distribute in a school zone to sustain his conviction for possession with intent to distribute within 1,000 feet of a school?

We shall affirm the court's judgments.

## FACTS

Around 3:15 p.m. on Friday, March 24, 2000, Fruitland City Police Officers Anthony Myers and Andrea Robinson arrived at the Summit Apartments to investigate a report of drug trafficking. The apartments are in a residential area and within 1,000 feet of Fruitland Elementary School. Officer

---

1. The court sentenced him to seven years imprisonment, suspending all but three years, for possession with intent, and a consecutive term of three years, suspending all but one year, for possession with intent in a school zone. He was also ordered to serve three years probation upon his release from prison. The court merged his simple possession conviction.

Myers saw appellant, whom he knew from previous contacts, standing near three other men.

Officer Myers approached appellant and asked to speak with him. Appellant nodded to the officer indicating that he would speak to him a couple of feet away. Appellant then took off his camouflage jacket and handed it to one of the men. Officer Myers asked appellant whether he had drugs in his coat and appellant dropped his head. Believing that appellant's actions suggested that he did have drugs in his coat, Officer Myers reached into a pocket of the coat and pulled out a plastic baggie that contained a white powdery substance. After appellant was placed under arrest, the police also recovered "Phillie blunt" cigars from his coat pocket. Subsequently, appellant gave a written statement explaining that a man had given him the cocaine and told him to "bring back $100."

At trial, Fruitland City Police Officer Matt Brown was accepted as an expert in the sale, packaging, and use of controlled dangerous substances. After detailing his experience as a narcotics investigator, Officer Brown opined that the cocaine found on appellant, which weighed 2.5 grams, had a street value of between $250 and $500. He testified that an addict would purchase only forty or sixty dollars worth of cocaine at a time and that some "chunks" of cocaine were larger than those normally seen on the streets. Based on his training and experience, the officer testified that the amount of cocaine was inconsistent with personal use.

Appellant testified that the cocaine was for his personal use and denied that he intended to sell or share it.

## DISCUSSION

### I.

■ Appellant argues that the trial court erred in instructing the jury on the elements of possession with intent to distribute cocaine within 1,000 feet of a school. Appellant argues that the court's instruction should have included the requirement that a defendant have actual knowledge that he

was within a school zone at the time he possessed the cocaine with intent to distribute.[2] Maryland courts have not addressed that question. We hold there is no such requirement; accordingly, we perceive no error in the trial court's instructions.

■ Maryland Rule 4–325(c) provides that a trial "court may, and at the request of any party shall, instruct the jury as to the applicable law[.]" An appellate court must make three determinations in deciding whether the trial court was required to give an instruction: (1) whether the requested instruction constituted a correct statement of the law; (2) whether it was applicable under the facts and circumstances of the case; and (3) whether it had been fairly covered in the instructions actually given. *Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344 (1984). It is the first determination that we are concerned with here.

■ "The guiding principle of statutory construction requires that we ascertain and effectuate the legislative intent." *Velez v. State,* 106 Md.App. 194, 207, 664 A.2d 387 (1995). That is, we review the words of the statute itself and give the words their "ordinary and popularly understood meaning." *Id.* "If the language of the statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, further analysis is not ordinarily required." *Id.* at 208, 664 A.2d 387. "[W]e approach the analysis of the language from a commonsensical, rather than a technical, perspective, always seeking to avoid giving the statute a strained interpretation or one that reaches an absurd result." *Id.*

---

**2.** The trial court instructed the jury on possession with intent to distribute cocaine within 1,000 feet of a school as follows:

The third charge is one of felonious possession of cocaine within one thousand feet of a school. In order to convict the Defendant of that crime the State must prove: one, that the Defendant possessed cocaine in sufficient quantity as to indicate an intent to distribute that cocaine; and two, that the Defendant was within one thousand feet of any real property used by or leased to any elementary or secondary school when the cocaine was possessed in sufficient quantity to indicate an intent to distribute the cocaine.

(quoting *Dickerson v. State*, 324 Md. 163, 171, 596 A.2d 648 (1991) (citations omitted)).

Maryland Code Annotated, Article 27, section 286D(a) (1996 Repl.Vol., 2000 Supp.), provides in pertinent part:

A person who manufactures, distributes, dispenses, or possesses with intent to distribute a controlled dangerous substance ... is guilty of a felony if the offense occurred:

(1) In, on, or within 1,000 feet of any real property owned by or leased to any elementary school, secondary school, or school board, and used for elementary or secondary education ... whether:

(i) School was in session at the time of the offense; or

(ii) The real property was being used for other purposes besides school purposes at the time of the offense[.]

The statute's words and phrasing clearly show that proof that a defendant have actual knowledge that he is within a school zone is not an element of the crime. The statute states that "[a] person who ... possesses with intent to distribute [cocaine] ... is guilty of a felony if the offense occurred: (1) In, on, or within 1,000 feet of any ... elementary school[,]" regardless of whether the school was in session. The intent part of the crime, *i.e.*, possession with an intent to distribute, is separated from the 1,000 foot requirement by several words and ideas. Moreover, the plain words of the statute evidence its intent to create a safe haven on or near school grounds. The statute makes irrelevant who the intended buyer is or the time of day a drug sale takes place. Requiring the State to also prove that the seller knew he was on or near school grounds would clearly contravene the clear purpose of the statute. This view of the clear language of the statute is supported by its legislative history.

In *Dawson v. State*, 329 Md. 275, 284–85, 619 A.2d 111 (1993), the Court of Appeals reviewed the legislative history of the above section, and stated:

Based on the legislative history of § 286D and the New Jersey statute from which it was derived, it is clear the

General Assembly sought to enact a preventative measure designed to assure the safety of school children. First, the General Assembly sought to halt the proliferation of drug use among school-age children. . . .

In addition, the General Assembly also sought to limit schoolchildren's exposure to the violent crime and demoralizing environment associated with the drug trade. Section 286D was thus an attempt to shield children from the direct and indirect effects of drug trading, including observing drug sales and the commission of violent crimes which may accompany drug trading. *See id.;* Testimony of Sen. Young on S.B. 289 ("The 'drug-free school zone['] seeks to establish not only the psychological mind set of a clean environment, but backs it up with the muscle needed to insure that environment."); *cf. State v. Brown,* 227 N.J.Super. 429, 547 A.2d 743, 747 (Law Div.1988)(New Jersey "drug free zone" statute was intended to protect children from both sale of drugs and indirect harm from exposure to an unsafe environment.).

As to proof of intent, we have stated that an

[i]ntent to distribute controlled dangerous substances is 'seldom proved directly, but is more often found by drawing inferences from facts proved which reasonably indicate under all the circumstances the existence of the required intent.' Likewise, an intent to distribute may be indicated by the very quantity of narcotics possessed.

*Hippler v. State,* 83 Md.App. 325, 338, 574 A.2d 348 (1990) (quoting *Salzman v. State,* 49 Md.App. 25, 55, 430 A.2d 847 (1981)) (in turn quoting *Waller v. State,* 13 Md.App. 615, 618, 284 A.2d 446 (1972)).

■ The purpose of the statute is to protect children from the "direct and *indirect* effects of drug trading." *Dawson,* 329 Md. at 285, 619 A.2d 111 (emphasis added). Thus, appellant's argument that "the mere presence on his person of a sufficient quantity to indicate an intent to distribute would not involve any of the evils cited in *Dawson* as the target of the statute" is plainly wrong.

Appellant cites to three cases to support his position that the State must prove that he knew he was in a school zone: *Taylor v. State,* 346 Md. 452, 697 A.2d 462 (1997); *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988); and *Davis v. State,* 9 Md.App. 48, 262 A.2d 578 (1970). Those cases, however, are easily distinguishable for they concern the constructive knowledge requirement for possession of an illegal substance. *See Taylor, supra* (evidence which established only that the appellant was present in the room where marijuana was recently smoked and that he was in proximity to the concealed container containing marijuana but belonging to another was insufficient to sustain appellant's conviction for possession); *Dawkins, supra* (appellant was entitled to an instruction that knowledge of the presence and illicit nature of the illegal substance is an element of the crime of possession of an illegal substance); *Davis, supra* (held that there was sufficient evidence to show that appellant had control over the apartment to sustain his conviction for possession of marijuana).

In *United States v. Falu,* 776 F.2d 46, 49–50 (2d Cir.1985), the court held that actual knowledge of proximity to a school was not required to convict a defendant of distribution within 1,000 feet of a school, under a federal enhancement penalty statute. The court, interpreting 21 U.S.C. section 845(a), providing penalties for those convicted of drug distribution near schools, stated: "Although we are aware that some schools are not clearly recognizable as such from all points within the 1,000 foot radius, Congress evidently intended that dealers and their aiders and abettors bear the burden of ascertaining where schools are located and removing their operations from those areas or else face enhanced penalties." *Falu,* 776 F.2d at 50. We believe the same can be said about the legislation before us.

In sum, we believe that the plain wording of the statute and its legislative history place the burden on drug dealers to keep the effects of the drug culture away from school-age children. Accordingly, we find no error in the court's decision not to instruct the jury that the accused must know he is within 1,000 feet of a school.

## II.

Appellant argues that there was insufficient evidence to sustain his conviction for possession with intent to distribute cocaine within 1,000 feet of a school. Appellant admits to possession of cocaine and to being within 1,000 feet of a school. He argues, however, that the State failed to prove an intent to distribute. He also argues that even if the State proved he had an intent to distribute, the State was required to prove that he intended to distribute the cocaine in a school zone. Appellant is wrong.

Evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dawson v. State*, 329 Md. 275, 281, 619 A.2d 111 (1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)). The limited question before an appellate court "is not whether the evidence *should have or probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder." *Fraidin v. State*, 85 Md.App. 231, 241, 583 A.2d 1065 (1991) (emphasis in original). It is not the function of the appellate court to determine the credibility of witnesses or the weight of the evidence. *Jones v. State*, 343 Md. 448, 465, 682 A.2d 248 (1996); *McCoy v. State*, 118 Md.App. 535, 538, 703 A.2d 237 (1997), *cert. denied*, 349 Md. 235, 707 A.2d 1329 (1998). Rather, it is the jury's task to resolve any conflicts in the evidence and assess the credibility of witnesses. *State v. Albrecht*, 336 Md. 475, 478, 649 A.2d 336 (1994).

It is well-understood in Maryland that there exists no difference between direct evidence and circumstantial evidence. *See Mangum v. State*, 342 Md. 392, 398, 676 A.2d 80 (1996) (rejecting the premise that circumstantial evidence is in some manner inferior to direct evidence); *In re Daniel S.*, 103 Md.App. 282, 287, 653 A.2d 512 (1995) (same). Nonetheless, several cases have recited the litany that "a conviction upon circumstantial evidence alone will not be sustained unless the

circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence." *Hebron v. State,* 331 Md. 219, 224, 627 A.2d 1029 (1993); *see Wilson v. State,* 319 Md. 530, 536–37, 573 A.2d 831 (1990); *West v. State,* 312 Md. 197, 211–12, 539 A.2d 231 (1988). We have stated that these cases are "understandably vague" but that the better test is "whether the evidence, circumstantial or otherwise, and the inferences that can reasonably be drawn from the evidence, would be sufficient to convince a rational trier of fact beyond a reasonable doubt, of the guilt of the accused." *Hagez v. State,* 110 Md.App. 194, 204, 676 A.2d 992 (1996); *see Jensen v. State,* 127 Md.App. 103, 120, 732 A.2d 319, *cert. denied,* 356 Md. 178, 738 A.2d 855 (1999).

 Appellant concedes that he possessed the cocaine. Although appellant denied at trial that he intended to sell the cocaine, his written statement to the police was to the contrary. An expert testified that the cocaine had a street value of between $250 and $500 and that an addict would purchase only between $40 and $60 of cocaine at a time. The expert further opined that based on his training and experience, the cocaine was not for personal consumption. Contradictions in testimony go to the weight of the testimony and credibility of the evidence, rather than its sufficiency. *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991). A jury is free to believe part of a witness' testimony, disbelieve other parts of a witness' testimony, or to completely discount a witness' testimony. *Muir v. State,* 64 Md.App. 648, 654, 498 A.2d 666 (1985). Under the circumstances, we hold that there was sufficient evidence from which a rational juror could believe that appellant possessed the cocaine with an intent to distribute.

To the extent that appellant argues that the State was required to prove that he intended to distribute cocaine in a school zone, we hold there is no such requirement. *See infra,* I.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**