716 A.2d 338

**Plevon V. PRYOR**

v.

**STATE of Maryland.**

**No. 1518, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Aug. 27, 1998.

672

Brian J. Murphy, Assigned Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for Appellee.

Argued before MURPHY, C.J., HOLLANDER, J., and MARVIN H. SMITH, Judge (retired), Specially Assigned.

MURPHY, Chief Judge.

█ In the Circuit Court for Baltimore County, Plevon V. Pryor,appellant, was convicted of possession with intent to distribute crack cocaine in excess of fifty grams. The State's evidence was sufficient to establish his guilt of that offense. This appeal calls into question the means by which that evidence was acquired, and requires that we examine an important rule of engagement applicable to the forcible stop of a motorist who commits a minor traffic violation while under police surveillance: the point in time at which continued detention violates the motorist's Fourth Amendment protection against unreasonable searches and seizures. We hold that, unless continued detention can be justified by what occurs during the brief period of time it takes to determine whether the motorist has a valid license and whether the vehicle has been reported stolen, a motorist who is subjected to a "Whren[1] stop" for a minor traffic violation cannot be

---

1. In *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court held that the Fourth Amendment does

detained at the scene of the stop longer than it takes—or reasonably should take—to issue a citation for the traffic violation that the motorist committed.

## Factual Background

Sometime in August of 1995, Detective Scott Griffin of the Baltimore County Police Department was told by a confidential informant that appellant was "selling a large quantity of cocaine in the Frederick Road area of Catonsville." The informant provided Detective Griffin with appellant's address as well as the make and model of appellant's automobile, and also said that appellant stored his cocaine in a secret compartment within the dash of that automobile.

Detective Griffin verified that appellant was the registered owner of the vehicle described by the informant, and that appellant leased an apartment in the building identified by the informant. On October 31, 1995, Detective Griffin observed appellant and two other individuals exit appellant's apartment building, enter appellant's vehicle, and leave the area. Detective Griffin pursued in an unmarked vehicle and when he observed appellant driving at the speed of forty miles-per-hour in a posted, twenty-five mile-per-hour zone, he had appellant's vehicle stopped by a uniformed officer in a marked police vehicle. Appellant and his passengers were ordered out of the vehicle and were forced to wait at the scene while a K–9 "drug dog" was summoned. When the dog arrived, it conducted a "perimeter search" of the vehicle and indicated the presence of a controlled dangerous substance within the vehicle. The dog then entered the vehicle and indicated that the substance was somewhere within the dash. A search of that

---

not prohibit a law enforcement officer who observes a traffic violation from stopping the motorist who committed that violation, even though the true reason for the stop is the officer's interest in investigating whether the motorist is involved in other criminal activity. Forcible traffic stops recognized as proper by that decision have become known as *Whren* stops.

area turned up a hidden compartment in which crack cocaine had been secreted.[2]

## Procedural History

Appellant filed a timely motion for suppression of evidence. At the suppression hearing, the State, appellant's counsel, and the court agreed that this case was controlled by *Munafo v. State*, 105 Md.App. 662, 660 A.2d 1068 (1995). The court stated:

> This case is very similar to [*Munafo v. State* ] . . . There is no question in the Court's mind that [appellant] was stopped for speeding. Whether or not that was subterfuge, makes no difference. However, when they stopped him for speeding, they had an obligation and a duty to issue him a speeding ticket and send him on his way as was the case in [*Munafo* ]. The question is whether the continued detention . . . was based on reasonable articulable suspicion.
>
> . . .
>
> The Court finds that although [the informant's tip coupled with Detective Griffin's independent verification] is somewhat thin . . . the Court feels it was sufficient at this time to give a reasonable person articulable suspicion that there was a crime being committed at that point.

The motion for suppression was denied and appellant was convicted. When this case was originally before us during our 1997 term, appellant presented the following questions for our review:

> I. Did the trial court err in declining to suppress the fruits of the search of [a]ppellant's car as the products of an unreasonable search?

---

**2.** Based on the seizure of cocaine from appellant's vehicle, a search warrant was issued for his residence, and the resulting search yielded additional cocaine, drug paraphernalia, and weapons. Appellant was arrested and transported to the police station, where he made a written statement in which he admitted that he had recently obtained approximately four and one half ounces of cocaine and that, on an ongoing basis, he had been distributing cocaine in the Catonsville area.

II. Did the trial court err in admitting [a]ppellant's statement because it was not proven to be voluntary?

We answered no to appellant's second question,[3] but concluded that a remand was necessary to determine the period of time between the moment of appellant's initial stop and the moment when the incriminating evidence was seized,[4] and gave the following directions to the circuit court:

> If the search of appellant's automobile violated his constitutional rights, he is entitled to a judgment of acquittal notwithstanding the fact that his post-arrest statement was voluntary. The statement, as well as items seized from appellant's apartment, constituted derivative evidence of the automobile search. If, on remand, the circuit court concludes that the automobile search was valid, appellant is not entitled to any relief because the jurors received evidence of his post-arrest statement.

On remand, the circuit court proceeded to resolve the issue of "how long the appellant was detained for K–9 to arrive," and announced the following findings and conclusions:

> The Court finds it was in the area of twenty, maximum of twenty-five, minutes that it took the K–9 officer to get there. That he, in fact, then let the dog sniff the car and a hit was alerted on the car.
>
> The Court further finds that certainly under the circumstances herein, the arresting officer who had the probable

---

**3.** At the suppression hearing, appellant also argued that his written statement should be suppressed because (1) his requests to see an attorney were ignored; (2) he was informed that he would receive a less severe penalty in exchange for a statement; and (3) he was "badgered" by detectives into giving the statement. We affirmed the circuit court's ruling that appellant's statement was voluntary.

**4.** When reviewing the circuit court's denial of a motion to suppress, we consider only the record of the suppression hearing and we give great deference to that court's factual findings unless clearly erroneous. *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749 (1987); *Aiken v. State,* 101 Md.App. 557, 563, 647 A.2d 1229 (1994); *cert. denied,* 337 Md. 89, 651 A.2d 854 (1995). We, however, make our own independent, constitutional appraisal of the police conduct at issue. *McMillian v. State,* 325 Md. 272, 281, 600 A.2d 430 (1992).

cause called immediately upon the stop of the car, which incidentally was speeding doing over forty miles an hour in a twenty-five mile an hour zone, and promptly called the K–9 unit. The K–9 officer testified that he was the only one available and that he promptly responded.

The Court finds that the stop and the amount of time was more than reasonable in this case given all of the facts that have been testified to in open court. I reject the fact that it was … it was forty-five minutes or more (as claimed) by the Defendant. I find that both officers' testimony to be credible with regard to the time frame and as such the motion, again, will be denied.

This second appeal followed, in which appellant now presents a single question for our review:

Did the suppression court err in finding that the 20 to 25–minute roadside detention of Appellant while awaiting [sic] for a drug sniffing dog was reasonable under all the circumstances?

■ We accept the circuit court's non-clearly erroneous finding of fact that appellant and his passengers were detained "in the area of" twenty minutes, and no longer than twenty-five minutes before the K–9 arrived. We are persuaded, however, that the question now before us should be answered "yes." Appellant was detained for an unreasonable period of time pending the arrival of the K–9. That unreasonable detention violated his Fourth Amendment rights.

## I.

■ The Fourth Amendment permits the warrantless search of an automobile when there is probable cause to believe that the automobile contains contraband or evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925); *Malcolm v. State*, 314 Md. 221, 226–227, 550 A.2d 670(1988). A search based on probable cause "obviously may continue until the probable cause has dissipated or developed into confirmed facts indicating criminal activity." *Graham v. State*, 119 Md.App. 444,

459, 705 A.2d 82 (1998). In this case, however, the officers did not have probable cause to conduct a warrantless search of appellant's vehicle.

█ The Fourth Amendment permits the forcible stop of an automobile, the frisk of its occupants, and the inspection of items within their reach, when there is (1) a reasonable articulable suspicion that the occupants are involved in criminal activity, and (2) a reasonable articulable suspicion that one or more of the occupants is armed with a weapon. *Derricott v. State*, 327 Md. 582, 587, 611 A.2d 592 (1992). In *Williams v. State*, 19 Md.App. 204, 310 A.2d 593 (1973), when this Court held that the rationale of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) applies to occupants of automobiles, Judge Moylan "noted that an occupant of an automobile is just as subject to a reasonable 'stop' and to a reasonable 'frisk' as is a pedestrian." *Id.* at 210, 88 S.Ct. 1868. In this case, however, there was no reasonable articulable suspicion to believe that a stop of appellant's vehicle, and/or a frisk of its occupants, was necessary for the officers' safety. "While there undoubtedly is some risk to the police in every confrontation, *Terry* has never been thought to authorize a protective frisk on the occasion of every authorized stop." *Simpler v. State*, 318 Md. 311, 321, 568 A.2d 22 (1990).

█ It is well settled, however, that the forcible stop of a motorist may be based on reasonable articulable suspicion that is insufficient to establish probable cause.[5] *Goode v. State*, 41 Md.App. 623, 629–630, 398 A.2d 801 (1979). Under *Whren*, the law enforcement officer who observes a traffic violation may stop the violator, even though the officer does so out of curiosity as to whether (or in the hope that) the stop will lead to the discovery of other incriminating evidence. *Whren*,

---

5. It is also well settled that, subject to narrow exceptions such as properly executed roadblocks or checkpoints, the Fourth Amendment protects motorists against forcible stops based on less than reasonable articulable suspicion. *Goode v. State*, 41 Md.App. 623, 629–630, 398 A.2d 801 (1979); *In re Albert* S., 106 Md.App. 376, 392–393, 664 A.2d 476 (1995); *Lawson v. State*, 120 Md.App. 610, 619–620, 707 A.2d 947 (1998).

supra, 517 U.S. 806, 116 S.Ct. at 1774; *Whitehead v. State,* 116 Md.App. 497, 500–501, 698 A.2d 1115 (1997). The forcible stop of appellant's vehicle was justified for two reasons: (1) there was reasonable articulable suspicion that appellant might be in possession of contraband; and (2) an officer saw appellant violate the law.

## II.

■ The right to make a forcible stop does not justify a subsequent unreasonable detention. In *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court noted that

the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion. Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation.

*Id.* at 709, 103 S.Ct. 2637.

In *Snow v. State,* 84 Md.App. 243, 578 A.2d 816 (1990), in *Munafo v. State,* 105 Md.App. 662, 660 A.2d 1068 (1995), and in *Whitehead,* supra, this Court reversed violations of the Maryland Controlled Dangerous Substances Act that were based on evidence turned up during searches of automobiles that had been lawfully stopped by officers who witnessed the driver violate a traffic law. In *Munafo,* the motorist stopped for a traffic violation was detained thereafter on the officer's "hunch" that there were drugs in the vehicle. *Id.* at 666–67, 660 A.2d 1068. We concluded that the officer had actually made two separate stops: (1) the traffic stop, and (2) a "second" stop that took place immediately after the first. *Id.* at 673, 660 A.2d 1068. We ultimately held that the "second" stop was not based on reasonable articulable suspicion, and that the evidence seized in the resulting search should have been suppressed. *Id.* at 676, 660 A.2d 1068.

Like *Snow, Munafo,* and *Whitehead,* appellant was lawfully stopped for a traffic violation, and then detained further. In

this case, however, the "second" stop (or continued detention) was not based on anything that occurred after appellant had been stopped for speeding. Unlike the cases in which a motorist is stopped on a mere "hunch" that illegal activity will be discovered, Detective Griffin's independent verification of the detailed information supplied by his confidential informant was more than sufficient to establish the reasonable articulable suspicion required for a forcible stop of appellant's vehicle. Here, the police team was entitled to stop appellant's vehicle **before** appellant committed the traffic violation that provided an independent justification for the stop.

The Fourth Amendment does not protect the motorist against the seizure of any incriminating evidence observed in "open view." *Brown v. State*, 15 Md.App. 584, 606–607, 292 A.2d 762 (1972). A police officer who has made a lawful stop of an automobile has every right to look "through the window into the interior of the car (with or without a) flashlight ... (just as) every member of the public (has) a right to do," and to thereafter search the automobile if the look through the window establishes probable cause for such action. *Scales v. State*, 13 Md.App. 474, 478–479, 284 A.2d 45 (1971). In this case, Detective Griffin and his fellow investigating officers had every right to be at the elbow of the uniformed officer who stopped appellant's vehicle, to "accost" appellant and the occupants of his vehicle, and to ask appellant for consent to search the vehicle.[6] It is obvious, however, that their exercise of the right to accost appellant and to look through the window into the interior of his vehicle could be accomplished in a much shorter period of time than it would take to issue a traffic citation.[7] In any event, no incriminating evidence was observed in open view.

6. If the K–9 had been present at the moment of the stop, or arrived during the period of permissible detention, its "perimeter search" of appellant's vehicle would have been entirely proper.

7. This is not a case in which an extended detention of the motorist could be justified by the need to administer a "field sobriety" test or by

Although the stop of appellant's vehicle was justified under two different theories, neither of those theories justified a detention that extended beyond the period of time that it would reasonably have taken for a uniformed officer to go through the procedure involved in issuing a citation to a motorist. The police did not have a right to subject appellant to the functional equivalent of two successive periods of detention. The reasonable articulable suspicion that preceded the *Whren* stop in this case did not extend the limited period of detention that is permissible under *Whren.*

### Conclusion

■■■ The Fourth Amendment permits the forcible stop of a motorist who is observed by a law enforcement officer to be violating a "rule of the road." The Fourth Amendment also permits the forcible stop of a vehicle when there is reasonable articulable suspicion to believe that its occupants are involved in criminal activity. In neither of these situations, however, may the occupants of the vehicle be detained for an extended period of time. In the absence of a justification for continued detention that manifests itself during the period of time reasonably necessary for the officer to (1) investigate the driver's sobriety and license status, (2) establish that the vehicle has not been reported stolen, and (3) issue a traffic citation, the Fourth Amendment prohibits a detention in excess of that period of time. In this case, whether the period of appellant's detention is characterized as a "first" (traffic) stop followed by a "second" (drug investigation) stop or as a single stop that was justifiable for two different reasons, appellant was detained much longer than was reasonable. The evidence derived from that unreasonable detention was acquired in violation of his Fourth Amendment rights.

**JUDGMENT REVERSED; COSTS TO BE PAID BY BALTIMORE COUNTY.**

---

technical difficulties in determining the status of the motorist's license or the ownership of the vehicle that has been stopped. The police knew that appellant had a valid driver's license and that he was the registered owner of the vehicle he was driving.