788 A.2d 678

**Jemale A. JOHNSON**

v.

**STATE of Maryland.**

No. 465, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Jan. 4, 2002.

Margaret L. Lanier, Assistant Public Defender and Stacey Elaine White–Welker (Rule 16 Student) (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Edward J. Kelley, Staff Attorney (J. Joseph Curran, Jr., Attorney General and Gary E. Bair, Asst. Atty. Gen., Baltimore, and Scott G. Patterson, State's Attorney for Talbot County of Easton, on the brief), for appellee.

Argued before SONNER, KRAUSER, and RAYMOND G. THIEME, JR. (Ret'd, Specially Assigned), JJ.

THIEME, Judge.

Appellant Jemale A. Johnson was convicted by the Circuit Court for Talbot County of possession of crack cocaine with intent to distribute, possession of marijuana, and possession of paraphernalia. The court sentenced appellant to ten years of incarceration, with seven years of that sentence suspended, for his conviction of possession of cocaine with intent to distribute. The court imposed a concurrent sentence of six months for his conviction of possession of marijuana. Johnson appeals his

convictions and presents the following questions for our review: [1]

1. Did the trial court err in denying the motion to suppress, since probable cause to arrest appellant for possession of marijuana was lacking?

2. Is the evidence sufficient to support the convictions for possession of marijuana, possession of paraphernalia, and possession of cocaine with intent to distribute?

We shall remand to the trial court the issue concerning the sufficiency of the evidence for appellant's conviction for possession of paraphernalia. Aside from that issue, we perceive no error by the trial court and we affirm its remaining judgments.

### Facts

Officer Lenox Trams of the Easton Police Department received a broadcast report of a possible car theft. He located a vehicle fitting the description, and observed two men inside. The officer stopped the vehicle and confirmed that the tag number matched the one from the broadcast, but concluded shortly thereafter that the vehicle was not stolen. As Trams approached the vehicle, however, he smelled marijuana. He also noticed in plain view through the window what he believed to be marijuana on the gear shifter equidistant between the driver and appellant, the front seat passenger. He ordered the driver to exit the vehicle, while he instructed appellant to remain inside. The driver and appellant both denied having any knowledge as to marijuana in the vehicle. Nevertheless, both were arrested. Trams subsequently found another partially burnt piece of marijuana cigarette in the ashtray of the vehicle.

---

1. Originally in appellant's brief he presented an additional question for our review, which we have omitted. That question was:

 Did the court err in allowing expert testimony on appellant's subjective intent?

 Subsequent to filing his brief, appellant withdrew that question from this appeal, and therefore we do not consider it.

Appellant was transported to the police station, where he was searched. Trams found a glycine bag containing a whitish powder substance inside a pocket in appellant's jeans. It was later determined that the substance in the bag was crack cocaine weighing a total of 1.5 grams, with a total value of $150, consisting of several rocks of the drug varying in value from five to forty dollars.

At appellant's trial, an officer who qualified as an expert in the distribution of drugs testified that in his opinion, based on the various sizes and values of the rocks in the bag, the crack cocaine found in appellant's jeans was intended for sales and distribution on the street. Upon convicting appellant of the various charges for which he was charged, the trial judge said:

Based upon the evidence the Court finds the Defendant guilty of possession of crack cocaine in a quantity sufficient to indicate under all of the circumstances an intent to distribute said crack cocaine. Guilty of possession of marijuana and guilty of possession of paraphernalia. The verdict is based upon the fact that the evidence discloses that the Defendant was in direct personal possession secreted on his person of ten times what is probably the most common unit of packaged crack cocaine. The common sale in my experience in the last 12 years sitting here is that most people pull up and ask if they are looking, if they are connected, all that other talk. They want a 20. And they buy a 20 or they buy a 40. They very seldom pull up and say, give me 1.5 grams, give me $150 or $200 worth. Also I think that it's important that we remember that the term distribution is not limited to sale. One may distribute by sale or by giving it away, by sharing it with ones [sic] friends. So because the Court does not feel that this is a quantity that is found in the usual street sale, the common street sale because of the packaging of the material, because of the differentiation of the pieces, the sizes of the pieces and because the Court feels that in this case that amount indicates an intent under all the circumstances to distribute, Court finds the Defendant guilty as I previously stated.

*Discussion*

## I. Motion to Suppress

Appellant contends that the trial court erred in denying his motion to suppress the cocaine found on his person. He argues that his arrest for possession of marijuana was illegal because it was not supported by probable cause, and therefore the cocaine found on him was inadmissible as a product of a search incident to an illegal arrest.

In reviewing the denial of a motion to suppress, this Court looks to the facts adduced at the suppression hearing that are most favorable to the State as the prevailing party. *Charity v.* State, 132 Md.App. 598, 606, 753 A.2d 556 (2000); *In Re Patrick Y,* 124 Md.App. 604, 608–09, 723 A.2d 523 (1999). "In determining whether the denial of a motion to suppress . . . is correct, the appellate court looks to the record of the suppression hearing, and does not consider the record of the trial itself." *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749 (1987). In considering that evidence, great deference is extended to the fact-finding of the suppression hearing judge with respect to weighing credibility and determining first-level facts. When conflicting evidence is presented, this Court accepts the facts found by the hearing judge, unless clearly erroneous. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Charity,* 132 Md.App. at 606, 753 A.2d 556; *Perkins v. State,* 83 Md.App. 341, 346–47, 574 A.2d 356 (1990). "As to the ultimate conclusion of whether a search was valid, we must make our own independent constitutional appraisal by applying the law to the facts of the case." *Charity,* 132 Md.App. at 607, 753 A.2d 556; *See also Ferris v. State,* 355 Md. 356, 368–69, 735 A.2d 491 (1999); *Marr v. State,* 134 Md.App. 152, 163, 759 A.2d 327 (2000), *cert. denied,* 362 Md. 623, 766 A.2d 147 (2001). "[T]he ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed *de novo."* *Ferris,* 355 Md. at 385, 735 A.2d 491 (quoting *Ornelas v. United States,* 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Bearing in mind the applicable

standard of review, we turn to the merits of appellant's contention.

■ "[A] police officer is generally required to obtain a search warrant to conduct a valid search of an individual. Nevertheless, there are exceptions to this requirement, such as when the search of an individual is incident to a lawful arrest." *Colvin v. State*, 299 Md. 88, 98, 472 A.2d 953 (1984). The *Colvin* Court applied the reasoning used by the Supreme Court in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467 (1973):

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable' search under that Amendment.

*Colvin*, 299 Md. at 97–98, 472 A.2d 953 (citing *Robinson*, 414 U.S. at 235, 94 S.Ct. 467).

The Supreme Court, in *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), made clear that this rule regarding a search incident to an arrest extended to searches occurring in a police station, when it said, "both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and if evidence of crime is discovered, it may be seized and admitted in evidence." *Id.* at 803, 94 S.Ct. 1234.

Clearly, "a reasonable search under such circumstances is predicated upon a prior lawful arrest. Conversely, if the prior arrest is unlawful, the subsequent search and seizure—necessarily derived from it—are also unlawful." *Livingston v. State*, 317 Md. 408, 411, 564 A.2d 414 (1989). It follows therefore that the search of Johnson's person whereby the crack cocaine was discovered was only valid if his initial arrest for possession of marijuana was valid. If the arrest of John-

son for possession of marijuana was invalid, however, then the crack cocaine found in his jeans must be suppressed and his conviction thereof reversed. Accordingly, we shall determine whether Johnson's arrest for possession of marijuana was lawful.

We begin with the initial stop of the vehicle by Officer Trams. "The Fourth Amendment protects against unreasonable searches and seizures, including seizures that involve only a brief detention." *Ferris,* 355 Md. at 369, 735 A.2d 491. In *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court said, "the usual traffic stop is more analogous to a so-called 'Terry stop,' ... than to a formal arrest." *Id.* at 439, 104 S.Ct. 3138 (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Stopping a vehicle for a speeding violation and detaining its occupants does not constitute a custodial arrest. *Colorado v. Bannister,* 449 U.S. 1, 3, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980). Yet such a stop does constitute a "seizure" within the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Therefore, the stop must be reasonable. *Terry,* 392 U.S. at 20, 88 S.Ct. 1868.

In the instant case, it was not a speeding violation for which Officer Trams stopped the subject vehicle. Trams nonetheless had a valid reason for stopping the vehicle, however, as it matched the description broadcast over his radio of a stolen vehicle. Therefore, the stop was reasonable, and it lasted only the short time required for Trams to determine whether the vehicle was stolen. Trams subsequently discovered that the vehicle was not stolen, and the traffic stop ordinarily would have ended there. Once "the purpose for which the investigatory stop was instituted has been accomplished and no other reasonable suspicion exists to support further investigation, there is no justification for continued detention and interrogation of citizens." *Ferris,* 355 Md. at 372, 735 A.2d 491. Therefore, "the continued detention of the car and the occupants amounts to a second detention." *Id.* The continued detention "is constitutionally permissible only if either (1)

the driver consents to the continuing intrusion or (2) the officer has, at a minimum, a reasonable, articulable suspicion that criminal activity is afoot." *Id.*

The United States Constitution requires that the "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. 1868 (footnote omitted). Once the initial stop concluded concerning whether the vehicle was stolen, the reasonableness of any intrusion is measured against an objective standard: whether a reasonably prudent person in the officer's position would have been warranted in believing that Johnson was involved in criminal activity that was afoot. *Derricott v. State,* 327 Md. 582, 588, 611 A.2d 592 (1992). "Due weight must be given not to [an officer's] inchoate and unparticularized suspicion or 'hunch,' but to 'the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" *Id.* (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868).

In the subject case Trams noticed an "overwhelming" and "powerful" odor he believed to be burnt marijuana. Clearly, his detection of this smell provided him with the reasonable and articulable suspicion that justified the continued detention. He then questioned both the driver and passenger. This questioning was reasonable both in scope and duration. While questioning the individuals, Trams observed in plain view a marijuana bud on the gearshift cover in the vehicle. "The Fourth Amendment does not protect the motorist against the seizure of any incriminating evidence observed in 'open view.'" *Pryor v. State,* 122 Md.App. 671, 681, 716 A.2d 338 (1998)(quoting *Brown v. State,* 15 Md.App. 584, 606–07, 292 A.2d 762 (1972)). "A police officer who has made a lawful stop of an automobile has every right to look 'through the window into the interior of the car (with or without a) flashlight ... (just as) every member of the public (has) a right to do,' and to thereafter search the automobile if the look through the window establishes probable cause for

such action." *Pryor,* 122 Md.App. at 681, 716 A.2d 338 (quoting *Scales v. State,* 13 Md.App. 474, 478–79, 284 A.2d 45 (1971)). The plain view doctrine serves to supplement a previously justified intrusion, . . . and permits a warrantless seizure." *Livingston,* 317 Md. at 412, 564 A.2d 414. Accordingly, Officer Trams had every right to spot the marijuana bud through the window of the vehicle.

 "A police officer has authority to make a warrantless arrest when the officer has probable cause to believe that a misdemeanor is being committed in his presence." *Ford v. State,* 37 Md.App. 373, 376, 377 A.2d 577 (1977). In *Ford,* a police officer had pulled over a driver of a vehicle for speeding. The driver exited the vehicle, and when he did so a strong odor of marijuana emanated from the vehicle. The officer subsequently placed the driver under arrest based on his detection of the marijuana odor. We said that "information derived through the sense of smell alone might, in proper cases, serve to establish probable cause to believe that a crime was being committed." *Id.* at 377, 377 A.2d 577. We went on to reiterate:

> We have no doubt, accordingly, that knowledge gained from the sense of smell alone may be of such character as to give rise to probable cause for a belief that a crime is being committed in the presence of the officer. When such conditions exist a warrantless arrest infringes upon no constitutional right.

*Id.* at 379, 377 A.2d 577.

In *Johnson v. State,* 8 Md.App. 187, 191, 259 A.2d 97 (1969), we discussed case law relevant to warrantless arrests:

> It is, of course, elementary that a warrantless arrest is valid where the arresting police officer has probable cause to believe that a misdemeanor has been or is being committed in his presence and that the arrestee is the misdemeanant. *Winebrenner v. State,* 6 Md.App. 440, 251 A.2d 610; *Robinson v. State,* 4 Md.App. 515, 243 A.2d 879; *Salmon v. State,* 2 Md.App. 513, 235 A.2d 758. In determining whether a misdemeanor has been committed in the officer's

presence the term 'presence' denotes that the commission of the misdemeanor is perceptible to the officer's senses, whether they be visual, auditory, or olfactory. *Davids v. State,* 208 Md. 377, 118 A.2d 636; *Ramsey v. State,* 5 Md.App. 563, 248 A.2d 659. And in determining whether probable cause exists to justify the arrest, 'only the probability, and not a prima facie showing of criminal activity is the standard of probable cause.' *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645. More specifically, the rule of probable cause is a nontechnical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify a conviction, but more evidence than would arouse a mere suspicion. *Edwardsen v. State,* 243 Md. 131, 220 A.2d 547; *Radcliffe v. State,* 6 Md.App. 285, 251 A.2d 11; *Cornish v. State,* 6 Md.App. 167, 251 A.2d 23; *Simms v. State,* 4 Md.App. 160, 242 A.2d 185.

▆▆▆ Here, Trams not only smelled burnt marijuana, but he also saw a marijuana bud in plain view. We find that Trams had probable cause to believe that a crime was being committed in his presence. The issue, however, is not quite that elementary. Johnson's argument is premised upon the notion that Trams had no probable cause pertaining to *him*— the passenger of the vehicle. Even if there was probable cause pertaining to the driver, who was operating and "controlling" the vehicle, it may not necessarily follow that there was probable cause to believe that the passenger was involved in whatever crime that may have been committed by the driver. Accordingly, having determined that probable cause existed as to the driver in this case, we must nonetheless continue with our analysis of probable cause to determine if it existed as to appellant as well.

An officer without a warrant should not make an arrest for a misdemeanor unless ... the circumstances are such that they would justify a person of ordinary prudence in believing that the suspected person is committing a misdemeanor.

*Livingston,* 317 Md. at 413, 564 A.2d 414 (quoting *Davids v. State,* 208 Md. 377, 384, 118 A.2d 636 (1955)).

[21-24] "In other words, there must be some factual basis to believe that a suspect is a participant in the misdemeanor before he may be arrested." *Id.* In *Livingston,* appellant was a rear seat passenger in a vehicle in which two marijuana seeds were discovered on the floor in the front. The Court held that such circumstances were insufficient to inculpate Livingston for possession of marijuana. *Id.* We note, however, that the *Livingston* Court weighed heavily that Livingston was a back seat passenger, and obviously limited its holding to the circumstances existing in that case, namely Livingston's status as a back seat passenger where evidence of criminal activity was found in the front of a vehicle. Indeed, almost every time the Court mentioned his name, it made sure to note his status as a "rear seat passenger." [2]

---

**2.** The *Livingston* opinion began as follows:

This criminal case grows out of two marijuana seeds. The important constitutional issue presented is whether, under the circumstances of this case, a police officer has probable cause to arrest and search *a backseat passenger* after observing two marijuana seeds located on the front floor of an automobile. We conclude that relying solely on their proximity, an officer does not possess sufficient cause to believe that *a backseat passenger* has dominion and control over two marijuana seeds on the front floor of a car.

317 Md. at 409 (emphasis added).

Livingston, who was not the owner of the vehicle, was seated in the *backseat.*

*Id.* (emphasis added).

Here, the presence of two seeds on the floor in the front of the car, without more, is insufficient to inculpate Livingston, *a rear seat passenger,* for possession of marijuana.

*Id.* at 413, 564 A.2d 414. (emphasis added).

Merely sitting in the *backseat* of the vehicle, Livingston did not demonstrate to the officer that he possessed any knowledge of, and hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car.

*Id.* at 415-16, 564 A.2d 414 (emphasis added).

Without more than the mere existence of two marijuana seeds located in the front of the car, we hold that the police officer lacked probable cause to arrest Livingston, a *rear seat passenger,* for possession of marijuana.

*Id.* at 416, 564 A.2d 414. (emphasis added).

The legality of a warrantless arrest is determined by the existence of probable cause at the time of the arrest. *See Collins v. State*, 322 Md. 675, 679, 589 A.2d 479, 481 (1991). "The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Doering v. State*, 313 Md. 384, 403, 545 A.2d 1281, 1290 (1988). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information would justify the belief of a reasonable person that a crime has been or is being committed. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Collins*, 322 Md. at 680, 589 A.2d at 481. We have recognized that in dealing with probable cause, we deal with probabilities. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Doering*, 313 Md. at 403, 545 A.2d at 1290 (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

*Johnson v. State*, 356 Md. 498, 504–05, 740 A.2d 615 (1999) (footnote omitted).

Section 594B of Article 27 sets forth the law in Maryland governing warrantless arrests, and provides in pertinent part:

(a) *Arrest for crime committed in presence of officer.*—A police officer may arrest without warrant any person who commits, or attempts to commit, any felony or misdemeanor in the presence of, or within the view of, such officer.

(b) *Arrest for crime apparently committed in presence of officer.*—A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the officer's presence or within the officer's view, may arrest without a warrant any person whom the officer may reasonably believe to have committed such offense.

Md.Code (1957, 1996 Repl.Vol.), § 594B of Art. 27.

Based on the circumstances that existed at the time of Johnson's arrest, it was reasonable for Trams to believe that

Johnson was in possession of marijuana. We find that the odor of burnt marijuana from the vehicle, along with the observation of the marijuana bud on the gearshift cover—within arm's reach of Johnson, provided Trams with probable cause to make a warrantless arrest of Johnson.

We are not persuaded by Johnson's insistence that he was unaware of the presence of marijuana in the vehicle. At the suppression hearing, Trams testified that he detected an "overwhelming" and "powerful" odor of marijuana when he approached the vehicle. He testified further that "[f]rom the odor it would appear to be that it had just been smoked prior to me stopping the car." The following was also adduced during the suppression hearing:

[Defense Counsel]: Your perception is that the smell was strong enough so that both people in the car had to know that there had been marijuana in the car?

[Officer Trams]: Yes.

\* \* \*

[Defense Counsel]: Let me sum up that you, you concluded by believing it was more likely than not that as a result of the smell of marijuana in the car that either the driver or the passenger or both, excuse me, both the driver and the passenger were aware of the flake or bud of marijuana that you found on the shift?

[Officer Trams]: Yes.

[Defense Counsel]: And as a result of that perception of probable cause you effectively arrested both individuals?

[Officer Trams]: Yes.

Officer Trams testified further when questioned by the State at the suppression hearing:

[State]: How close were you to the car when you smelled the odor of burnt marijuana?

[Officer Trams]: Approximately as I approached the vehicle I was at the rear bumper of the vehicle when I could smell the odor of marijuana.

\* \* \*

[Officer Trams]: The gear shift had a leather or a plastic cover and the piece of marijuana was actually on top of the covering of the gear shift.

[State]: And just for the records [sic] sake how close was that to each individual in the car?

[Officer Trams]: The gear shift was in the middle of the vehicle so it's within arms [sic] reach of both of them.

[State]: Was it closer to either one or was it kind of right in the middle?

[Officer Trams]: It was right in the middle.

■ Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. *See Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991); *McKinney v. State,* 82 Md.App. 111, 117, 570 A.2d 360 (1990). In performing this role, the fact finder has the discretion to decide which evidence to credit and which to reject. *See Velez v. State,* 106 Md.App. 194, 202, 664 A.2d 387 (1995). We find no reason to disturb the finding by the trial court regarding the credibility of Tram's testimony as to what he observed and smelled prior to arresting Johnson. Accordingly, we cannot conclude that Johnson was unaware of the presence of marijuana in the vehicle. There existed an "overwhelming" and "powerful" odor emanating from the vehicle he was in, and marijuana was present on the gearshift, within his arm's reach. Bearing in mind that the rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, we think that adequate facts and circumstances existed within the officer's knowledge that would have justified the belief of a reasonable person that a crime had been or was being committed by Johnson.

We hold that the trial court was correct in its determination that probable cause existed to arrest Johnson in light of Officer Tram's explanation of the circumstances surrounding the traffic stop. Upon looking to the facts adduced at the suppression hearing in a light most favorable to the State as

the prevailing party, we find that appellant's motion to suppress was properly denied.

## II. Sufficiency of the Evidence

Appellant asserts that the evidence was insufficient to sustain his convictions for possession of marijuana, possession of paraphernalia, and possession of cocaine with intent to distribute. We disagree as to the marijuana and cocaine with intent to distribute, and hold that the evidence was in fact sufficient to sustain those convictions. We remand, however, concerning the conviction for possession of paraphernalia.

"In reviewing the sufficiency of the evidence to sustain a criminal conviction, it is the duty of this Court to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Moye v. State,* 139 Md.App. 538, 544, 776 A.2d 120 (2001). "The judgment of the circuit court will not be set aside unless clearly erroneous, with due regard given to the opportunity of the trial court to judge the credibility of the witnesses." *Taylor,* 346 Md. at 457, 697 A.2d 462.

When reviewing the sufficiency of the evidence, " 'it is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case.'" *McDonald,* 347 Md. at 474, 701 A.2d at 685 (citing *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336, 337 (1994)). Our function is to review the evidence in the light most favorable to the State, *see id.* (quoting *Albrecht,* 336 Md. at 478, 649 A.2d at 337) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), and to give " 'due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.'" *Id.* (citing *Albrecht,* 336 Md. at 478, 649 A.2d at 337). While we do not re-weigh the evidence,

we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt. *See id.* (citing *Albrecht,* 336 Md. at 478–79, 649 A.2d at 337).

*White v. State,* 363 Md. 150, 162, 767 A.2d 855 (2001).

"Possession shall mean the exercise of actual or constructive dominion or control over a thing by one or more persons." *Id.* at 163, 767 A.2d 855. "[T]o prove control, the evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited . . . drug in the sense contemplated by the statute, i.e., that [the accused] exercised some restraining or direct influence over it." *Id.* at 161, 767 A.2d 855 (citations and internal quotation marks omitted). "The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988). "Possession may be constructive or actual, exclusive or joint." *Taylor,* 346 Md. at 458, 697 A.2d 462.

### *Marijuana*

Johnson's conviction for possession of marijuana rested on circumstantial evidence that he was in joint and constructive possession of the marijuana found in the vehicle in which he was a passenger. "Although a conviction may rest on circumstantial evidence alone, a conviction may not be sustained on proof amounting only to strong suspicion or mere probability." *White,* 363 Md. at 162, 767 A.2d 855. "Circumstantial evidence which merely arouses suspicion or leaves room for conjecture is obviously insufficient. It must do more than raise the possibility or even the probability of guilt. It must . . . afford the basis for an inference of guilt beyond a reasonable doubt." *Id.* at 163, 767 A.2d 855.

In *Taylor*, police, after smelling marijuana in a hallway, entered a motel room that had been rented by Taylor and four friends. 346 Md. at 455, 697 A.2d 462. The police smelled marijuana and observed clouds of smoke. They searched the room and discovered bags of marijuana and a packet of rolling papers concealed inside two carrying bags belonging to another occupant of the room. *Id.* The police found Taylor lying on the floor either asleep or feigning sleep. Taylor was arrested and charged with possession of the marijuana found in the bags. *Id.* at 456, 697 A.2d 462. He was subsequently convicted because he was in close proximity to the marijuana, people were smoking marijuana in his presence, and he had some possessory right in the premises.

The Court of Appeals reversed Taylor's conviction, however, concluding that the evidence did not justify any reasonable inference that Taylor knew about, and thus possessed, the contraband. Writing for the Court, Judge Raker explained that "mere proximity to the drug, mere presence on the property where it was located, or mere association, without more, with the person who does control the drug or property on which it is found, is insufficient to support a finding of possession." *Id.* at 460, 697 A.2d 462 (quoting *Murray v. United States*, 403 F.2d 694, 696 (9th Cir.1969) (citations and internal quotation marks omitted)).

In *White*, the Court of Appeals reversed appellant's convictions for importation of cocaine, possession of cocaine, and possession of cocaine with the intent to distribute. White was a front seat passenger in a vehicle in which cocaine had been found. In reversing, the Court of Appeals reasoned that it could not be inferred that White had dominion and control over cocaine found in a sealed box in the trunk of a vehicle. The Court said, "the mere existence of cocaine located in the trunk of [the driver's] vehicle was not sufficient to prove that [White], a front seat passenger, exercised dominion and control over the contraband." 363 Md. at 167, 767 A.2d 855. Therefore, the Court held, "the evidence, and reasonable inferences drawn therefrom, does not reach the standard of guilt beyond a reasonable doubt." *Id.*

We discussed *Livingston* earlier in this opinion as part of our analysis on probable cause. We now look to the facts of that case once again in conjunction with our review of the sufficiency of the evidence. In *Livingston*, a state trooper pulled over a vehicle for speeding. 317 Md. at 409, 564 A.2d 414. Aided by his flashlight, the trooper saw two marijuana seeds on the front floor of the automobile, and subsequently arrested the driver and two passengers. Cocaine and marijuana were discovered on Livingston, the back seat passenger, pursuant to a search incident to his arrest. *Id.* Convicted for possession of cocaine with the intent to distribute, possession of cocaine, and possession of marijuana, Livingston appealed, questioning whether, relying solely on the contraband's proximity, the trooper had sufficient cause to believe that a backseat passenger with no possessory interest in the vehicle had dominion and control over the marijuana seeds found on the front floor of the vehicle. *Id.* The Court of Appeals reversed, holding that "[m]erely sitting in the backseat of the vehicle, Livingston did not demonstrate to the officer that he possessed any knowledge of, and hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car." *Id.* at 415–16, 564 A.2d 414 (footnote omitted).

Appellant relies on *Livingston* and *Taylor* and also cites *State v. Leach,* 296 Md. 591, 463 A.2d 872 (1983), and *Garrison v. State,* 272 Md. 123, 321 A.2d 767 (1974), in support of his contention regarding the insufficiency of the evidence to sustain his conviction for possession of marijuana. Those cases, as well as other Maryland cases we have reviewed where appellate courts have found that the evidence was insufficient to support a conviction for possession of a controlled dangerous substance, are easily distinguishable, as the controlled substance was either in a closed container, not within arm's reach, or outside of the plain view of the accused.

In *Leach,* police found phencyclidine (PCP) in a closed container in a bedroom closet in an apartment over which appellant, along with his brother, had "joint dominion and control." 296 Md. at 596, 463 A.2d 872. The Court of Appeals

held that the evidence was insufficient to sustain appellant's possession conviction, because "even though [the defendant] had ready access to the apartment, it cannot be reasonably inferred that he exercised restraining or directing influence over PCP in a closed container on the bedroom dresser or over paraphernalia in the bedroom closet." *Id.* In *Garrison,* heroin discovered was not in appellant's plain view, as she was found in bed in another room while her husband was in the process of discarding 173 bags of heroin in the toilet. 272 Md. at 126, 321 A.2d 767.

In the instant case, Johnson was a front seat passenger in a vehicle in which marijuana was found in the front close to where he was sitting. The marijuana was found within arm's reach of Johnson, while an "overwhelming" and "powerful" odor of marijuana emanated from the vehicle. Burnt marijuana was also found in the ashtray of the vehicle.[3] His claim regarding insufficiency of the evidence against him conveniently discounts the applicable law on the topic, as reiterated by *Folk v. State,* 11 Md.App. 508, 275 A.2d 184 (1971):

It is well-settled that the proscribed possession of marihuana or of narcotic drugs under the Maryland law need not be sole possession. There may be joint possession and joint control in several persons. And the duration of the possession and the quantity possessed are not material, nor is it necessary to prove ownership in the sense of title.

*Id.* at 511–12, 275 A.2d 184 (citations and internal quotation marks omitted).

"Nor is it necessary, in order to be found in joint possession of a contraband drug, that the appellant have a 'full partnership' in the contraband. It is enough that she controlled so much of it as would be necessary to permit her to take a puff upon a marihuana cigarette." *Id.* at 512, 275 A.2d

---

**3.** The burnt marijuana found in the ashtray was not discussed when we considered Johnson's motion to suppress, as this evidence was found *after* Johnson's arrest, and thus was not an issue at the suppression hearing.

184 (citation omitted). We stated in *Folk* that we have reversed convictions involving joint possession because of:

> 1) the lack of proximity between the defendant and the contraband, 2) the fact that the contraband was secreted away in hidden places not shown to be within his gaze or knowledge or in any way under his control, and 3) the lack of evidence from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use of the contraband.

*Id.* at 514, 275 A.2d 184.

A review of the facts of the present case indicates that all three elements of this analysis have been affirmatively established, thus not placing this case in the same breadth as those cases that have been reversed based on insufficiency. We have reviewed cases in which we have upheld convictions amid claims by appellants that they were not in direct physical possession of the evidence seized, and we find that the present case is in conformity:

> The common thread running through all of these cases affirming joint possession is 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Id.* at 518, 275 A.2d 184.

It is true that Johnson did not own the vehicle, nor did he command some possessory right in the vehicle. Circumstances existed, however, from which a reasonable inference could be drawn that he was participating with the driver and owner of the vehicle in the mutual use and enjoyment of the contraband. *See Cook v. State*, 84 Md.App. 122, 135, 578 A.2d 283 (1990) (stating, "despite the lack of proof that appellants had a proprietary or possessory interest in the house, the

evidence was sufficient to permit the jury to conclude that appellants exercised joint and constructive possession of the cocaine."). There is no difficulty in drawing a reasonable inference that the contraband was within Johnson's view, or otherwise within his knowledge, under the circumstances of this case. *Folk,* 11 Md.App. at 518, 275 A.2d 184.

We give due regard "to the opportunity of the trial court to judge the credibility of the witnesses." *Taylor,* 346 Md. at 457, 697 A.2d 462. Accordingly, we accept the testimony by Trams as an accurate assessment of the circumstances that existed. He detected a "powerful" and "overwhelming" odor of marijuana as soon as he reached the rear bumper of the vehicle. He further testified that he observed through the window a marijuana bud on the gear shifter near where Johnson was sitting. Johnson, unlike Trams, was not "on the outside looking in." Rather, Johnson was inside the vehicle from which this "powerful" and "overwhelming" odor of marijuana was emanating, and he was sitting right next to the marijuana bud Trams observed through the window. We would be hard-pressed to ignore that Johnson certainly had a much better opportunity to see the marijuana bud and smell the marijuana odor than did Trams.

If the odor was so "powerful" and "overwhelming" as far back as the rear bumper and outside the vehicle, then common sense dictates that it was even more "powerful" and "over-whelming" inside the vehicle. Likewise, if Trams was able to observe so quickly the marijuana bud through the window, then it is extremely unlikely that Johnson, who was sitting right next to it, had not seen it as well. As such, it is inconceivable to us that Johnson had no knowledge of the presence of marijuana in the vehicle.

Johnson argues that he was not "in dominion or control of the gear shift area of the vehicle. On the contrary, the gear shift in any vehicle is within the exclusive dominion and control of the driver, not the passenger." While we would agree that, absent unusual circumstances, the *clutch pedal* of the vehicle ordinarily is within the exclusive dominion of the

driver, we cannot agree that the top or cover of the *gear shifter* is likewise within the driver's exclusive dominion. Undoubtedly, it is the driver of a vehicle who uses the gear shifter to shift gears in the course of driving the vehicle. Common sense dictates, however, that a passenger can easily place an object on top of the gear shifter, and similarly can easily remove an object from that location. As is usually the case, the gear shifter was equidistant from both occupants of the vehicle. We need not be certified automobile mechanics to conclude that the gear shifter was not within the exclusive dominion of the driver, as it was possible for the passenger to place and remove small objects on top of it.

We recognize that not every individual should be criminally responsible when contraband is found in a vehicle in which he or she is a passenger. The guilt or innocence of any passenger will depend on the facts and circumstances of that particular case. Arguably, any item of contraband found within a vehicle can be said to be "within arm's reach" of any passenger in that vehicle. In certain small vehicles, an individual ostensibly can "reach" for and successfully pick up any object inside. We do not necessarily intend, however, for "arm's reach" to extend quite that far in such cases. We do not attempt to form a bright-line test here as to what does or does not constitute within "arm's reach" to drugs or paraphernalia in a vehicle. The precise proximity of an object to an individual in any case will determine whether that object is in fact within "arm's reach" of that person. Here, the marijuana bud was just as close to Johnson as it was to the driver of the vehicle. Johnson would barely have had to move to pick up the marijuana bud that was beside him. He could have picked up the marijuana bud simply by reaching out several inches for it.

We also do not pass on whether contraband within arm's reach is necessarily dispositive on its own in inferring possession or knowledge. Here, the marijuana bud was not only within arm's reach, but also within the plain view of Johnson. It was not covered, concealed, or otherwise hidden in any manner from Johnson. Rather, it was out in the open, very

visible to him, and only inches away. Further, the obvious presence of the marijuana was only further evidenced by the strong smell of marijuana emanating from the vehicle. It is the totality of the circumstances here that leads us to our determination.

The evidence against Johnson on which his marijuana possession conviction was based, viewed in a light most favorable to the State, supports a rational inference that he had knowledge and control of the contraband seized. Therefore, the evidence supports his convictions. *Moye*, 139 Md.App. at 550, 776 A.2d 120. Said in other words, we are fully convinced that the admissible evidence adduced at trial either supported a rational inference of, or demonstrated directly or circumstantially, the facts to be proved, from which any fact-finder could fairly have been convinced, beyond a reasonable doubt, of appellant's possession of the marijuana seized, and, therefore, of his guilt for possession of marijuana. Thus, we affirm appellant's conviction for possession of marijuana. *Metz v. State*, 9 Md.App. 15, 23, 262 A.2d 331 (1970).

### Paraphernalia

 Johnson argues that the evidence was insufficient to sustain his conviction for possession of paraphernalia. Johnson did not receive a separate sentence for this conviction, however, and therefore his conviction for this charge is not a final judgment and in turn is not appealable.

[T]he appealable order is the order which imposes a sanction upon the defendant and which ordinarily represents a disposition of the criminal case. The final judgment in a criminal case consists of the verdict and, except where there is an acquittal, the sanction imposed, which is normally a fine or sentence of imprisonment or both.

*Webster v. State*, 359 Md. 465, 474, 754 A.2d 1004 (2000).

 "[I]n a criminal case, a final judgment is not rendered until the court has entered a verdict and a sentence." *Christian v. State*, 309 Md. 114, 119, 522 A.2d 945 (1987). "In a criminal case, a final judgment consists of a verdict and

either the pronouncement of sentence or the suspension of its imposition or execution." *Lewis v. State*, 289 Md. 1, 4, 421 A.2d 974 (1980). " 'Conviction' and 'sentence' are legally distinct. Conviction is the determination of guilt; sentence is the judgment entered thereon." *Buckner v. State*, 11 Md.App. 55, 59, 272 A.2d 828 (1971). "Usually, a criminal case is complete and disposed of when sentence has been pronounced, and, generally, sentence is the punishment to be inflicted on the convicted person in the form of imprisonment or fine or both." *Langworthy v. State*, 284 Md. 588, 596–97, 399 A.2d 578 (1979) (citation and footnote omitted).

> At sentencing, the trial judge announced, in pertinent part: Madam Clerk you may say the Defendant having been found guilty of possession with intent to distribute cocaine as a punishment for that offense he is sentenced to the Department of Corrections for a period of 10 years. Seven years are suspended, 3 years are to be served from March the 23rd of 2001.... The Defendant also having been found guilty of possession of marijuana as punishment for that offense he is sentenced to 6 months concurrent with the previous sentence....

There was no mention at all of his conviction for possession of paraphernalia. As he received no sentence for that conviction, it is not appealable. It is therefore not properly before us, and we do not consider it. Accordingly, we remand this issue to the trial court. We point out to the trial court that it may want to consider the majority opinion set forth by the Court of Appeals in *Dickerson v. State*, 324 Md. 163, 596 A.2d 648 (1991), in its handling of this matter. In *Dickerson*, the Court addressed the following issue:

> [T]he issue that we must address is whether, when it enacted § 287A, the Legislature intended that two convictions result whenever a container is used to contain, store or conceal a controlled dangerous substance.

*Id.* at 170, 596 A.2d 648.

Appellant in that case was convicted of intent to distribute cocaine. He was also convicted separately for possession of

paraphernalia based on the vial that contained the cocaine. *Id.* at 165, 596 A.2d 648. The Court noted, "[v]iewing the matter from a common sense perspective, we are persuaded that the Legislature did not intend, by enactment of § 287A, to sanction dual convictions under the circumstances *sub judice.*" *Id.* at 173, 596 A.2d 648. The Court held, "when there is no other drug paraphernalia, a defendant may only be convicted of possessing cocaine with the intent to distribute, even though the cocaine possessed is in a vial, which is thereby being used as drug paraphernalia." *Id.* at 174, 596 A.2d 648.

### *Cocaine with intent to distribute*

■ Johnson contends that the evidence was insufficient to sustain his conviction for possession of cocaine with intent to distribute. He argues that his conviction was based solely on the quantity of crack cocaine in his possession—an amount he maintains is not necessarily consistent with an intent to distribute. He points out that no other evidence was found indicating his intent to distribute.

■ When charged with the intent to distribute, the element of intent is generally proved by circumstantial evidence. *Fontaine v. State,* 135 Md.App. 471, 479, 762 A.2d 1027 (2000) (citations omitted). The amount of crack cocaine found on appellant's person "permits, although does not demand, an inference that appellant intended to distribute the ... crack cocaine." *Collins v. State,* 89 Md.App. 273, 279, 598 A.2d 8 (1991).

> As to proof of intent, we have stated that an intent to distribute controlled dangerous substances is seldom proved directly, but is more often found by drawing inferences from facts proved which reasonably indicate under all the circumstances the existence of the required intent. Likewise, an intent to distribute may be indicated by the very quantity of narcotics possessed.

*Smiley v. State,* 138 Md.App. 709, 716, 773 A.2d 606 (2001) (citations omitted).

Appellant says that the quantity that he possessed "was not gargantuan," as he "had only 1.5 grams." He even goes further, as he proceeds to give us a lesson in arithmetic, informing us that "[a] gram is approximately the weight of 1/28TH of an ounce. There are 16 ounces in a pound. A gram is, therefore, 1/448TH of a pound." Certainly, we are grateful for this lesson, but we point out to appellant that everything in life is relative. The amount Johnson possessed may not seem like a large amount to him, but it certainly does to us. We have already reproduced that which the trial judge said when he announced the verdict. We again quote a portion of that finding, as it effectively addresses this contention by appellant:

> The verdict is based upon the fact that the evidence discloses that the Defendant was in direct personal possession secreted on his person of *ten times* what is probably the most common unit of packaged crack cocaine. The common sale in my experience in the last 12 years sitting here is that most people pull up and ask if they are looking, if they are connected, all that other talk. They want a 20. And they buy a 20 or they buy a 40. They very seldom pull up and say, give me 1.5 grams, give me $150 or $200 worth.

We have reviewed the applicable law, and we have found it nowhere mentioned that one must possess a "gargantuan" amount to be guilty of intent to distribute. We are certainly thankful that appellant apparently was not in the habit of possessing "gargantuan" amounts of crack cocaine on his person. We point out to appellant, however, that to possess certain amounts even short of "gargantuan"—whether it be just "a lot," a "good amount," or even only a *mere* ten times the normal usage amount—also is not a good idea. "In Maryland, no specific quantity of drugs has been delineated that distinguishes between a quantity from which one can infer and a quantity from which one cannot make such an inference" of an intent to distribute. *Collins,* 89 Md.App. at 279, 598 A.2d 8.

Johnson argues that the State's case against him for intent to distribute rested on no more "than an inference

arising from quantity." This assertion conveniently disregards the consideration applied to the manner in which the crack cocaine had been broken down. Even when the quantity of drugs does not, in and of itself, demonstrate an intent to distribute, other circumstantial evidence may be introduced to prove intent. *Id.* Here, the manner in which the various rocks of crack cocaine were divided also indicated his intent to distribute.

The trial court accepted Captain Robert L. Hobbs, Jr. as an expert "in the field of packaging, pricing and the mechanics of distribution of drugs" in the subject geographical area. At trial, Hobbs was shown the crack cocaine that had been discovered on appellant's person. He testified that the total value of the cocaine was at least $150, and that it had "been broken up into various sizes of rocks. The sizes that I see in the bag vary from what they call a crumb, a $5 or $10 piece. There are numerous $20 pieces. And there is a larger rock that I see in here that probably would sell for $40." Hobbs concluded that in his opinion the intended use of the crack cocaine found on appellant was "[f]or sales and distribution on the street." Johnson presented no testimony refuting these findings by Hobbs.

The fact finder has the discretion to decide which evidence to credit and which to reject. *See Velez,* 106 Md. App. at 202, 664 A.2d 387. Contradictions in testimony or determinations of credibility go to the weight of the evidence, and not to its sufficiency. *Binnie,* 321 Md. at 580, 583 A.2d 1037; *Smiley,* 138 Md.App. at 719, 773 A.2d 606. Bearing in mind the applicable standard on sufficiency determinations, we hold that the evidence adduced at Johnson's trial was sufficient to support his conviction for possession of cocaine with intent to distribute.

**JUDGMENTS AFFIRMED, WITH THE EXCEPTION OF APPELLANT'S CONVICTION FOR POSSESSION OF PARAPHERNALIA. THAT ISSUE IS REMANDED TO THE CIRCUIT COURT FOR TALBOT COUNTY FOR**

FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID TWO–THIRDS BY APPELLANT AND ONE–THIRD BY TALBOT COUNTY.